## THE AMERICAN COMPANY *v.* G. F. BRADFORD, A. J. McGUIRE, JAMES MOYLE, A. McCORMICK, D. McKINNE, FRED. W. PARKER, SAMUEL HARRIS, WILLIAM STEGEMAN, AND THOMAS WHITE.

SPECIAL VERDICT OF A JURY.—It is the province of the Court to determine as to what particular facts the jury shall find specially, and neither party has the right to dictate the terms of any particular question to be submitted to the jury.

ACQUISITION OF RIGHT TO USE WATER BY PRESCRIPTION.—The use of water in any particular way for a period corresponding to the time limited by statute within which an action must be commenced to determine the right to it, raises a presumption of title to the same in the person enjoying the same as against a right in any other person, which might have been but was not asserted; but in order that this presumption of title may be conclusive, the right to the use of the water must have been asserted under a claim of title with the knowledge and acquiescence of the person having a prior right, and must have been uninterrupted.

BURDEN OF PROVING RIGHT TO WATER BY ADVERSE USE.—The burden of proving an adverse uninterrupted use of water for five years, with the knowledge and acquiescence of the person having a prior right, is cast on the party claiming it; and if he leaves it doubtful whether the use was adverse, known to the owner, and uninterrupted, it is not conclusive in his favor.

FAILURE TO PLEAD FIVE YEARS ADVERSE USE OF WATER.—The party claiming a right to the use of water by five years adverse possession, must set up the same as a defense in his answer; and if he does not, he loses the right to introduce evidence in support of it, and to have the Court instruct the jury in relation to it.

DECREE ENJOINING USE OF WATER.—A decree enjoining the owners of a mining claim, situated on a creek below a dam at the head of a ditch, from diverting any water from or in any manner interfering with the waters of the creek that rise

above the dam, does not prevent the owners of the mining claim from using the waters of the creek which may flow down the same after the ditch is supplied.

APPEAL from the District Court, Tenth Judicial District, Sierra County.

The facts are stated in the opinion of the Court.

*Williams & Johnson,* for Appellants.

We admit that in the case of lands adverse possession only affects the remedy; and that a party could never, by adverse possession, acquire the legal title, though he could acquire the legal right to possession, and that therefore the Statute of Limitations would have to be pleaded.

But we contend the rule is very different in case of the use of the waters of a running stream. In case of such use, the right thereto is by lapse of time ripened into an absolute title; and as we need not plead the kind of title, or the number of titles we have and rely on, it is not necessary to set up the Statute of Limitations. It is only where the remedy is affected by adverse enjoyment that we must plead the Statute of Limitations; we need do no such thing where an absolute right is conferred.

We contend, also, that under the doctrine "that the jury may presume a grant," we may set up title in ourselves, or right by purchase; and if our deed is lost, or if we never had one, we may show by the evidence that we have enjoyed the use of the waters for a time corresponding to the local Statutes of Limitation, and that is of itself evidence that such deed was given, and is just as good evidence as the deed itself would be. And again, if we show a deed was given, as in this case, and then show that we, under that deed, used the water for five years, plaintiffs acquiescing in our right under that deed, that will be conclusive that the party making the deed had the power to sell and convey all the rights we enjoyed under that deed.

Mr. Washburne, in his able work on Easements and Servitudes, (p. 20,) says: "It may therefore be stated as a general

proposition of law, that if there has been an uninterrupted user and enjoyment of an easement—a stream of water for instance—in a particular way, for more than twenty-one or twenty, or such other period of years as answers to the local period of limitations, it affords conclusive presumption of right in the party who shall have enjoyed it; provided such use and enjoyment be not by authority of law, or by or under some agreement between the owner of the inheritance and the party who shall have enjoyed it."

Then it would seem from the law that if we have a deed, and that we have used the waters in question for a time corresponding to our Statute of Limitations, that our right to continue the use of the waters is perfect, unless we had first ignored our deed, or unless we had began the use of the waters by an agreement with the plaintiffs. (*Crary* v. *Union Water Company*, 25 Cal. 504.)

*Vanclief & Gear*, for Respondent.

By the Court, CURREY, J.

The plaintiff, composing a joint stock company, under the name and style of the "American Company," brought its action in June, 1863, against the defendants, alleging in its complaint that for more than ten years then last past it had been the owner and in possession of a certain ditch called the "Deadwood Ditch," leading and extending and conducting the waters from Deadwood Creek, in Sierra County, to Craig's Flat and Morristown, in the same county, for mining purposes. The plaintiff alleged that by means of the ditch and a dam at the head of it across the creek, it had, during the period named, except when wrongfully prevented by the defendants, diverted, as it lawfully might, from the creek, at the dam, sufficient of its waters to fill the ditch, which quantity of water had been, during all such period, appropriated and used by the plaintiff for mining purposes; and further alleged that plaintiff was still entitled to the rights which the company had so acquired.

The rights and property thus acquired, the plaintiff alleged, had been obstructed by the defendants, who had from time to time, without right, entered upon the ditch and dam, and upon the creek above the dam, and by ditches, sluices and dams of their construction, diverted large quantities of the waters of the creek from the ditch, by reason of which a sufficient quantity of water to fill the plaintiff's ditch could not and did not flow through it, whereby the plaintiff had sustained damage in a sum specified. The plaintiff also alleged a threatened continuance by the defendants of the wrongs of which they complain, and they show by allegations that remedies at law were inadequate for the redress of the injuries threatened, and then pray for judgment for damages and for an injunction restraining the defendants pending the suit, and that such injunction might, on the final determination of the case, be made perpetual.

All the defendants but one appeared and answered. They first admitted that plaintiff owned the ditch described, and then denied that plaintiff was at any time entitled to so much of the water of the creek as would fill its ditch, except when there was sufficient in the creek for that purpose after supplying the defendants' mining claims below the dam. The defendants also denied that during " the whole " of the period of ten years the plaintiff had diverted as much of the waters of the creek as would fill its ditch, or ever was entitled to divert therefrom that quantity, except when a surplus sufficient therefor remained after the defendants were supplied. The defendants further denied that they or either of them at any time " wrongfully, injuriously or unlawfully," diverted or turned any water of the creek out of or from the ditch, and in the same connection they denied that any water by them at any time diverted from the creek of right ought to have flowed into or through plaintiff's ditch, and in conclusion they denied that the plaintiff had sustained any damage by the acts of the defendants.

For an affirmative defense, the defendants answered that long prior to the location of the plaintiff's ditch and dam,

certain mining claims were located and worked in the bed and
banks of Deadwood Creek, by persons from whom the defend-
ants had derived their right and title whereby the defendants'
grantors became and were entitled to the use and possession
of all the waters of the ' creek, or so much thereof as might
become necessary to the working of these mining claims, as
the prior appropriators of the waters of the creek.  And they
also averred that the waters diverted by them from Dead-
wood Creek naturally flowed down its bed upon defendants'
mining claims until wrongfully obstructed and diverted by the
plaintiff, and that the same were necessary to the working of
such mining claims.

A preliminary injunction was granted in the case, and when
the cause was tried a judgment was rendered for the plaintiff,
and the injunction was made perpetual.  The appeal is from
the judgment and from an order of the Court overruling a
motion made by the defendants for a new trial.

The questions of fact in issue between the parties were tried
by a jury.  At the trial the defendants requested the Court to
instruct the jury to find specially in respect to certain facts.
This the Court refused to do, but submitted to them the fol-
lowing questions, with directions to respond to them in writing :

First—Is plaintiff entitled to all the waters of Deadwood
Creek at the point where the same is diverted by its ditch ?

Second—Are defendants entitled to any portion of the waters
of Deadwood Creek which rise above the dam of plaintiff, and
if they are so entitled, to how much and at what times ?

The Court also directed the jury to return a general verdict,
and to fix the amount of damages if their verdict should be
for the plaintiff.

The defendants excepted to the Court's refusal to submit to
the jury the questions of fact propounded on their behalf, and
also to the submission of the two propositions set forth and to
the direction to the jury to fix the amount of damages in case
their verdict should be for the plaintiff.

The jury rendered a general verdict for the plaintiff and
assessed the damages at three hundred dollars, and to the first

question they answered: " That plaintiff is entitled to all the waters of Deadwood Creek at the point where the same is diverted by its ditch," and to the second question they answered: "That defendants are not entitled to any portion of the waters of Deadwood Creek which rise above the dam of plaintiff."

The one hundred and seventy-fourth section of the Practice Act defines the nature and character of a general verdict, and also of a special verdict; and the next section provides that in an action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. But in all other cases, the Court may direct the jury to find a special verdict upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon.

It is the Court's province to determine as to what particular facts the jury shall find specially, and neither party has the right to dictate the terms of any particular question to the jury, and for refusing to comply with such a request no error can properly be assigned.

At the request of the plaintiff, the Court gave to the jury certain instructions, which it is not necessary to notice in detail. The instructions so given are, in our judgment, a just exposition of the law on the subjects to which they relate.

The defendants on their part requested the Court to instruct the jury to the effect that if they believed from the evidence that the ditch was located before the defendants' mining claims, and that plaintiff had a good title to the waters of the creek above the dam, and had never entered into any agreement as to the quantity of water to be used by each of the parties, but also still believed from the evidence that the defendants had used a portion of the waters adversely to the plaintiff for more than five years before the commencement of the action, that then, to the extent of the water so used by the defendants, the jury should find in their favor. The Court refused to so instruct the jury, and the defendants excepted.

The instruction requested proceeds upon the theory that the plaintiff acquired by prior appropriation of the waters of the creek a property therein of which it could not be divested otherwise than by a grant or by operation of law; and assuming this, the defendants claimed that by their adverse use and enjoyment of a portion of the waters of the stream for the period stated, the presumption had arisen that they had derived from the plaintiff by grant the right to the use of the water to the extent which they had during such period used the stream.

The general and established doctrine is that an exclusive and uninterrupted enjoyment of water, in any particular way, for a period corresponding to the time limited by statute within which an action must be commenced for the recovery of the property or of the assumed right held and enjoyed adversely, becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person which might have been, but was not asserted. (3 Kent's Com. 441 to 446; *Bealey* v. *Shaw*, 6 East. 214; *Shaw* v. *Crawford*, 10 John. 236; *Johns* v. *Stevens*, 3 Vermont, 316; *Union Water Co.* v. *Crary*, 25 Cal. 504.)

The right which the defendants claim under the grant, which they assumed to exist, as evidenced by their adverse use and enjoyment of the water for five years, they denominate an easement. An easement or servitude may be created by grant or prescription, and when created it will pass by conveyance with the dominant estate (that is, with the estate to which it is appurtenant, as an incorporeal hereditament) attached to the servient estate, subjecting the latter to the benefit of the former. But the owner of the easement or servitude has no general property in nor seizin of the servient estate, though he may, by holding a fee in the dominant estate, have an estate of inheritance in the easement or servitude. (Wash. on Easements and Servitudes, Ch. 1, Sec. 1; Ersk. Inst. 352; *Wolf* v. *Frost*, 4 Sand. Ch. R. 89.)

A grant of an estate in lands, whether corporeal or incorporeal, may be presumed from an adverse enjoyment for the

period corresponding to the Statute of Limitations within which an action might have been maintained against the person holding and enjoying adversely. But what must be the circumstances under which such presumption may arise? In order that the enjoyment of an easement in another's land may be conclusive of the right claimed, it must have been *adverse* in the legal sense of the term; that is, the right must have been asserted under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted. The burden of proving this is on the party claiming the easement. If he leaves it doubtful whether the enjoyment was adverse, known to the owner and uninterrupted, it is not conclusive in his favor. (2 Greenleaf's Ev. Sec. 539; Greenleaf's Cruise, Tit. 31, Ch. 1, note 1 to Sec. 21, and cases therein cited.)

According to the common law system of pleading a defendant could not give in evidence under the general issue, in excuse or justification of an alleged trespass, a right of common, or a public or private right of way or a right to an easement, nor any interest in land short of property or right of possession. (*Saunders* v. *Wilson*, 15 Wend. 338; *Babcock* v. *Lamb*, 1 Cow. 239; *Rouse* v. *Bardin*, 1 Hen. Black. 352; 2 Saund. Pl. and Ev. 856; 1 Chitty Pl. 505.) A defense of the kind mentioned had to be pleaded specially. The reason of the rule was to prevent surprise. (*Demick* v. *Chapman*, 11 John. 132.)

The rule of the common law here referred to has not been changed so as to obviate the necessity of pleading specially such defense. By the law of this State the defendants were bound to interpose their alleged right by answer as well as by evidence, provided it be conceded that plaintiff had the prior right and title to the waters of the creek, as the requested instructions assumed as the predicate for the presumption that a grant of a portion of the waters had been made to the defendants. This defense was, within the language of the forty-sixth section of the Practice Act, *new matter*, which it was necessary to plead in order to become available for the defendants. (*McKyring* v. *Bull*, 16 N. Y. 307.) The defend-

ants having failed to tender by answer an issue as to their right to a portion of the water as an easement or servitude derived from the plaintiff by grant to be presumed from an adverse user and enjoyment of it for five years, the Court properly refused to instruct the jury as requested.

But the requested instruction was properly refused on another ground. All the conditions on which a grant may be presumed were not stated. The defendants may have used a portion of the waters to which the plaintiff was of right entitled, adversely to the company for five years before the action was commenced, but still without the knowledge or acquiescence of the plaintiff, and not without interruption. If the jury had been instructed as requested it would have been erroneous, aside from the objection that the defense was not pleaded, because an adverse use and enjoyment may have been interrupted or may have been without the knowledge and acquiescence of the plaintiff, in either of which events no presumption of a grant could have arisen. (Wash. on Easements and Servitudes, 86.)

The remaining alleged error is, that the decree in the case goes beyond the relief sought by the complaint. By the complaint the plaintiff makes no claim of right to the waters of the creek beyond an amount sufficient to fill its ditch; and the wrongful acts of the defendants, of which the plaintiff complains, are limited to an invasion of its right to the water to the extent stated. The creek may furnish an amount of water in excess of the quantity necessary to fill the ditch, to which the plaintiff has no right but to which the defendants may be entitled as the owners of mining claims on the stream below the dam. The decree of the Court forever enjoins and restrains the defendants from diverting any water from or in any manner interfering with the waters of the creek that rise above the plaintiff's dam, and from diverting any of the waters of the creek that would otherwise flow into and through the ditch, and from in any manner interfering with the plaintiff's ditch and dam.

The decree enjoining the defendants against interference

with the waters of the creek which rise above the dam, we understand to mean, as the language fairly imports, not to prohibit the use and enjoyment by the defendants of the waters of the creek which may remain and flow down the creek after the plaintiff's ditch is supplied with the quantity necessary to fill it, but to prevent them from interfering with the water above the dam or disturbing the plaintiff's right to a quantity sufficient to fill and supply the ditch; as to the surplus, it does not appear the plaintiff has the right to detain or divert it from the defendants.

Judgment affirmed.