[No. 13533. In Bank. — August 4, 1890.]

ALTA LAND AND WATER COMPANY, APPELLANT,
v. JOHN HANCOCK ET AL., RESPONDENTS.

RIPARIAN RIGHTS — EXTINGUISHMENT — APPROPRIATION — PRESCRIPTIVE
RIGHT TO DIVERT STREAM. — The rights of riparian proprietors are an
appurtenance to the land, running with it, as a corporeal hereditament,
and cannot be extinguished or defeated by an appropriation under the
statute, but may be extinguished by the acquirement of a prescriptive
right to divert the stream by actual and uninterrupted user, with or
without the statutory appropriation, if adverse, for a useful purpose,
under claim of right, and continued for the period prescribed by the
statute of limitations.

ID. — RELATION OF APPROPRIATION TO PRESCRIPTION — NOTICE OF AD-
VERSE USER — RUNNING OF STATUTE. — Statutory appropriation is not
necessary to prescription, but it gives to one seeking to acquire a pre-
scriptive right to divert water the advantage of notice to prior claimants
that his user is adverse, so as to set the statute of limitations in motion.

ID. — QUIETING TITLE AGAINST RIPARIAN OWNERS — PRESCRIPTIVE RIGHT
OF PLAINTIFF — EXTENT OF RIGHTS OF DEFENDANTS. — A plaintiff in
an action to quiet title, who claims a right to divert a stream as against
riparian proprietors below the point of diversion, must base his claim
wholly upon prescription, and if his claim has not merged into a pre-
scriptive right, he has no right which can be quieted, and is not in a
position to question the rights or the extent of the rights of the defend-
ants.

ID. — PERIOD OF PRESCRIPTION. — A prescriptive right to the diversion and
use of a stream of water becomes fixed only after five years' adverse
enjoyment.

ID. — ELEMENTS OF ADVERSE ENJOYMENT OF WATER. — The adverse en-
joyment necessary to a prescriptive right to the diversion and use of a
stream of water must have been asserted under claim of title with the
knowledge and acquiescence of the person having the prior right, and
must have been such an invasion of the rights of the party against whom
it is claimed that he would have a ground of action against the intruder,
must be accompanied by all the elements required to make out an ad-
verse possession, and must be continuous and uninterrupted for the
period of five years.

ID. — ADVERSE POSSESSION OF RIPARIAN LAND — USER OF WATER THERE-
UPON NOT ADVERSE. — The adverse user of land belonging to a riparian
proprietor does not make the use of waters of the stream upon such land
adverse to the riparian owner, such user being to his advantage, and
giving him no independent right of action for diversion of the stream,
so long as it was not diverted away from his land, nor used under notice
of a claim of right to divert or use it elsewhere.

ID. — INTERRUPTION OF USE — CONTINUOUS USE — ACTION OF EJECTMENT
FOR RIPARIAN LAND — USE PENDING ACTION — RECOVERY OF WATER. —

The adverse user of water must be uninterrupted as well as continuous for five years, and the former does not follow from the latter; for the bringing of an action of ejectment for the riparian land upon which the water is used, before the expiration of the five years, is an interruption of the possession of the water as an appurtenant to the land, although there may be a continuous enjoyment of the water pending the action, and the recovery of the land will carry with it the recovery of the water as an appurtenance thereto.

ID. — USE OF WATER BY TRESPASSER — APPURTENANCE TO LAND — DISSEVERANCE — RIGHTS OF EJECTED TRESPASSER. — Though the use of water by a trespasser upon the land of another does not make such water appurtenant to the land upon which it is wrongfully used, yet the use of water upon land to which it is already appurtenant, by one who is a trespasser thereon, will not dissever the water from the land, or confer any right to divert it, or to convey any title thereto, upon being lawfully ejected from the land.

ID. — EXTENT OF RIPARIAN LANDS — SEGREGATION OF NON-RIPARIAN PORTION BY TRESPASSER — IRRIGATION NO CRITERION. — All land bordering upon a stream which is held by the same title is riparian to the stream; and the area of lands to which riparian rights are appurtenant cannot be diminished by the acts of a trespasser segregating for the time being the actual occupancy, without segregation of title, of a portion of the tract not bordering on the stream; nor can the use of all the waters of the stream for the irrigation of such portion of the tract either render the use of such waters non-riparian, or establish it as a fact that there can be but that number of acres riparian to the stream.

ID. — RIGHT OF IRRIGATION — SUPPLY OF NATURAL WANTS — LIMITS OF REASONABLE USE. — The right to a reasonable use of the water of a stream by a riparian proprietor, in common with others in like situation, for the purposes of irrigation, is recognized only as being in subordination to the rights of all other riparian proprietors to the use of water for the supply of the natural wants of man and beast, extended to the occupants of each and every tract bordering upon the stream, held as an entirety, whatever its extent, and the right of irrigation cannot be extended even by implication so as to exclude the rights of other riparian proprietors.

APPEAL from a judgment of the Superior Court of San Bernardino County.

The facts are stated in the opinion of the court.

*Byron Waters, Wicks & Ward, Edwin A. Meserve,* and *Charles J. Perkins,* for Appellant.

Burton and Stones perfected a right by prescription to divert and use all of the waters of the creek. (Code Civ. Proc., sec. 321, 322; *Cox* v. *Clough,* 70 Cal. 345;

*Crandall* v. *Woods*, 8 Cal. 144; *Grisby* v. *Clear Lake Co.*, 40 Cal. 396; *Heilbron* v. *Last Chance Water Co.*, 75 Cal. 117–123; *Campbell* v. *West*, 44 Cal. 646; *Cave* v. *Crafts*, 53 Cal. 135; *Alhambra Water Co.* v. *Richardson*, 72 Cal. 598–603.) The judgment in the action of ejectment is conclusive only upon questions involved in that action, and upon which it depended, or upon matters which under the issues might have been litigated therein, and cannot affect the rights here asserted. (*Phelan* v. *Gardner*, 43 Cal. 306; *Rogers* v. *Higgins*, 57 Ill. 244; *Wadsworth* v. *Connell*, 104 Ill. 369; *Hill* v. *Morse*, 61 Me. 541; *Lorillard* v. *Clyde*, 48 N. Y. Sup. Ct. 409; *Russell* v. *Place*, 94 U. S. 606; *Tutt* v. *Price*, 7 Mo. App. 194; *Malloney* v. *Horan*, 49 N. Y. 111, 112; 10 Am. Rep. 335.) No taxes having been shown to have been levied and assessed upon the right to divert and use the water, it was not necessary to show their payment. (*Heilbron* v. *Last Chance Co.*, 75 Cal. 117–123; *Ross* v. *Evans*, 65 Cal. 440; *Coonradt* v. *Hill*, 79 Cal. 587–591.) And being only a private ditch, the right to divert water therein will not be presumed to have been assessed. (*Coonradt* v. *Hill*, 79 Cal. 587–591, construing Pol. Code, sec. 3663.) In this regard, a ditch of this character differs from a piece of land or public ditches. (*Reynolds* v. *Willard*, 80 Cal. 608; *Coonradt* v. *Hill, supra.*)

Regardless of who owns the land, only so much on each side of the stream is deemed to be riparian thereto as the same will reasonably irrigate. (*Lux* v. *Haggin*, 69 Cal. 255; *Stanford* v. *Felt*, 71 Cal. 249; *Swift* v. *Goodrich*, 70 Cal. 103; *Heilbron* v. *76 Land and Water Co.*, 80 Cal. 189.) It makes no difference where the water was finally conducted to and used. (*Heilbron* v. *Last Chance Co.*, 75 Cal. 117; *Smith* v. *Logan*, 18 Nev. 149.)

*Barclay, Wilson & Carpenter*, and *E. E. Rowell*, for Respondents.

No valid appropriation was made by Barton and Stones, and the water was only claimed to be used on

respondents' land. The person against whom adverse possession is held must have knowledge or means of knowledge of such occupation and claim of right. (*Thompson* v. *Felton,* 54 Cal. 547; *Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100.) Proof of possession for five years, without proof of an adverse claim under the provisions of the statute, will not sustain the plea of the statute. (*Greer* v. *Tripp,* 56 Cal. 209; *Osborne* v. *Clark,* 60 Cal. 622; *Sheils* v. *Haley,* 61 Cal. 157; *Cox* v. *Clough,* 70 Cal. 345; *Farris* v. *Merritt,* 63 Cal. 119.) In order to sustain the plea of the statute, payment of taxes, as provided by section 325 of the Code of Civil Procedure, no matter to whom assessed, must be shown. (*Ross* v. *Evans,* 65 Cal. 440; *McNoble* v. *Justiniano,* 70 Cal. 395.) The water was part of the land, and assessed with it. (*Heilbron* v. *Last Chance Water Co.,* 75 Cal. 117; *Lux* v. *Haggin,* 69 Cal. 390, 451; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; Pol. Code, sec. 3663.) In order to establish a right by prescription, the acts by which it is sought to establish it must operate as an invasion of the right of. the party against whom it is set up. The enjoyment relied upon must afford ground for an action by the other party. (*Cox* v. *Clough,* 70 Cal. 345; *Anaheim Water Co.* v. *Semi-Tropic Water Co.,* 64 Cal. 185–192; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181.) And if it is doubtful whether the use was adverse, known to the owner, and uninterrupted, it is not conclusive in favor of the claimant. (*American Co.* v. *Bradford,* 27 Cal. 361.)

Fox, J. — This is an action to quiet title to the claim of plaintiff, a corporation, to the right to use seven eighths of the waters of East Twin Creek in San Bernardino County. Judgment went for the defendants, from which plaintiff appeals, the case coming up on the judgment roll.

Plaintiff claims by prescription in favor of its grantors, and under grant of such alleged prescriptive right

to itself.   Defendants are riparian proprietors on both sides of the stream, below the point where plaintiff claims the right of diversion.   It was alleged and shown that in April, 1875, the defendant Hancock, who was then the owner of a tract of 1,280 acres, part of the Muscupiabe rancho, lying on both sides of this creek, and below the point at which plaintiff claims the right to divert seven eighths of its waters (and under whom the other defendants now claim as grantees), took the preliminary steps to acquire by appropriation five hundred inches of this water, but this right of appropriation was never perfected, and its consideration is of no moment in this case, as it is conceded by both parties that defendants take nothing by that proceeding.

Nor is it necessary in this case to discuss the character or extent of the right of Hancock or his grantees to the use of the waters of the creek by virtue of his riparian proprietorship.   That they had some right in the flow, and to the use of said waters, as such riparian proprietors, is conceded on both sides.   To the extent that it existed, it was an appurtenance to the land, running with it as a corporeal hereditament.   It was one which might be segregated by grant or by condemnation, or extinguished by prescription, but could not be defeated by simple appropriation.   The term " appropriation," as applied to the acquirement of the right to the use of water, has in this state a statutory technical meaning, and the simple act of appropriation under the statute will not of itself defeat or extinguish any prior right.   Actual and uninterrupted user, however, with or without the statutory appropriation, if adverse, for a useful purpose, and under claim of right, continued for the period prescribed by the statute of limitations, gives a prescriptive right which will extinguish the rights of the riparian proprietor.   Statutory appropriation, therefore, is not necessary to prescription, but it gives to one who seeks to acquire right by prescription this advantage, that it

gives to prior claimants notice that his user is adverse and under claim of right, and sets the statute in motion against such prior claimant.

In this case the claim of plaintiff is based upon prescription pure and simple. If it is valid, it has, to the extent of seven eighths of the waters of that creek, extinguished the rights of defendants. If under the facts, however, plaintiff's claim has not merged into title by prescription, then plaintiff has no right which can be quieted in this action, and it is not in position to question the right or the extent of the right of defendants.

The court finds that in April, 1875, the defendant Hancock was the sole owner of the 1,280-acre tract of land hereinabove mentioned; that in May, 1887, he conveyed the same, with the water rights appurtenant thereto, to the other defendants herein, reserving to himself seventeen acres thereof, with a certain quantity of the water for the use of said seventeen acres, and that at the time of the filing of the complaint herein the defendants were the owners in fee of the whole of said tract; that in the spring of 1876, one Burton entered upon eighty acres of land, part of said 1,280-acre tract, situate from a half to three quarters of a mile from the channel of the creek, claiming the same as a squatter, and believing the same to be government land; and at the time of such entry diverted from the channel of said creek, at a point beyond and outside of the rancho, all the waters of said creek, and conducted the same through an artificial channel made by him to the said eighty-acre tract so entered upon by him, and there used all of said water for the irrigation of said eighty-acre tract, until some time in 1877, when one Stones in like manner entered upon a forty-acre tract, part of said 1,280-acre tract, adjoining that so entered upon by Burton, and thereafter, by some arrangement between Burton and Stones, the latter commenced to use one fourth of the

water so diverted by Burton, for the irrigation of his forty-acre tract; that Stones also entered as a squatter, and he and Burton both claimed adversely to Hancock; that they so continued to use all the said water, for said purpose, and upon the said lands, and not elsewhere, until August, 1887; that the said use was continuous, open, notorious, peaceable, and adverse to all the world; that while so using and claiming the said water, they also used and claimed the land upon which the same was used, by the same character of holding and title, namely, adverse to Hancock, but never set up any special or distinctive right in the water different from their right in the land, but claimed both land and water; that in July, 1881, Hancock, being then the owner of the whole of the said 1,280 acres, commenced an action in ejectment against Burton, Stones, and others for the recovery of the possession thereof, which culminated in a judgment in favor of Hancock in August, 1885, appealed to this court, where the judgment was affirmed, and the *remittitur* therein filed in the court below August 4, 1887, when a writ of possession was issued under which Burton and Stones were put out, and possession restored to Hancock; that five years did not intervene between the time when the water was so diverted by Burton, and the time when such action was commenced by Hancock; that it is not shown that said Burton or Stones ever paid any taxes on said water right, or on the right to divert the same, or that any were ever levied thereon, but it is shown that Hancock has paid taxes, and taxes have been levied upon the whole of said 1,280 acres of land every year since, and including the said year 1876.

The court then finds that during the year 1887, and prior to the execution of the writ of possession, all the right which Burton and Stones, or either of them, acquired in and to the said waters, or to use and divert the same, came down by certain mesne conveyances to and became vested in this plaintiff, who acquired and took the

same with full notice of the pendency of said ejectment suit, and that plaintiff still holds the same.

And as conclusion of law, the court finds that the plaintiff, at the time of the commencement of this action, had no estate, right, title, or interest in or to the waters of said creek, or any of the tributaries thereof, and thereupon ordered judgment for defendants, which was entered accordingly.

It will thus be seen that the whole question is, whether these facts gave to plaintiff's grantors a prescriptive right to the diversion and use of that water.

This right becomes fixed only after five years' adverse enjoyment. (*Crandall* v. *Woods*, 8 Cal. 136; *Union Water Co.* v. *Crary*, 25 Cal. 504; 85 Am. Dec. 145.) And to have been adverse, it must have been asserted under claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted. (*American Co.* v. *Bradford*, 27 Cal. 360.) In order to constitute a right by prescription, there must have been such an invasion of the rights of the party against whom it is claimed that he would have had ground of action against the intruder. (*Ahaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 185.) To be adverse, it must be accompanied by all the elements required to make out an' adverse possession; the possession must be by actual occupation, open, notorious, and not clandestine; it must be hostile to the other's title; it must be held under claim of title, exclusive of any other right, as one's own; it must be continuous and *uninterrupted* for the period of five years. (*Thomas* v. *England*, 71 Cal. 458.)

Can it be said that the use made of this water was adverse to Hancock's riparian right, when it was used upon his own land riparian to the stream, and under no pretense or claim of right to divert or use it elsewhere? We think not. The use of the land may have been adverse and against his will, but the bringing of the water

to and use of it upon his land was an improvement of his land, and an advantage to him; not an act which of itself gave him an independent cause of action for its diversion, and required him to bring such action or lose his right in the water. If, while as trespassers occupying a portion of his land, Burton and Stones had undertaken to divert the waters of the stream, and carry them away from the land, this would have been an act so hostile to his right as to have given him an independent cause of action for the diversion. If, after notice of such an act, he had suffered them to divert the water away from his land for the period of five years, without interruption, they might have acquired a right in the water which would have extinguished his own. But as his right in the water, or the use thereof, was a corporeal hereditament appurtenant to his land, we cannot conceive that such right would be lost by user upon his land, under no claim of right to divert or use it elsewhere.

Nor was the use "uninterrupted" for the period of five years. The court has apparently, *ex industria*, refrained from the use of that word in the findings. And yet the use must be not only adverse, under claim of right, open, and notorious, but it must be "uninterrupted" for the period of five years, to ripen into a right by prescription. The court has found that the use was "continuously" from 1876 to 1887, but not that it was "uninterruptedly." Counsel insists that the words are synonymous, — that the one means the same as the other. They are very nearly, but not in law exactly, synonymous. This case furnishes a fair illustration of the distinction between them. Burton and Stones used this appurtenant to the land "continuously" for the period of eleven years. They used the land itself, and this appurtenant to it on the land, during the whole of the same period, "continuously." The use of the land was unquestionably adverse to the claim and right of Hancock, and yet its continuous use for the period of

eleven years did not give to those using it a right to the land by prescription, — though the rule of law as to acquiring right to land and right to water by prescription is the same. Then why did it not give the right? Because, just before the expiration of the five years, the use was " interrupted " by the bringing of the action in ejectment, and this interruption, though it did not break the continuity of use until final judgment and writ of possession, six years afterward, stopped the running of the statute, and no right could be acquired by use after that during the pendency of that suit. As this in law so interrupted the use of that land as to prevent the acquiring of a prescriptive right to the land itself, so it also, and by the same act, so interrupted the use of every appurtenant to the land which was being used on it, as to prevent the acquiring a prescriptive right to that appurtenant, to use it there or elsewhere. The recovery of the land in ejectment carried with it the recovery of every appurtenant thereto. Burton and Stones, according to the findings, had never attempted to acquire or asserted any right in the water independent of or segregated from the land, or under other right, title, or claim, than that which they asserted to the land. They therefore, when ejected, had nothing to convey to plaintiff, and the plaintiff acquired nothing under them.

We fully concede the proposition contended for by appellant, based upon *Smith* v. *Logan*, 18 Nev. 149, that the use of water by a trespasser upon the land of another does not make such water appurtenant to the land upon which it is wrongfully used. But it does not follow from this that the use of water upon land to which it is already appurtenant, by one who is a trespasser thereon, will give him such a right in the water as that he may thereafter divert it from the land, or upon being ejected therefrom, convey to a stranger a legal title in the water or in the use thereof. We do not mean to be understood as holding, and indeed it is not claimed, that any-

thing has been added to the rights of defendants by the acts of Burton and Stones; but simply that nothing has been taken from those rights.  It is probable that there are those as against whom these defendants could not successfully claim the right to the use of all the water which Burton and Stones carried upon their lands; but the measure of their rights is not here involved. The judgment in this case does not determine them. It simply determines that the plaintiff has no right which it is entitled to have quieted as against the defendants.

Beyond the proposition above stated, the case of *Smith* v. *Logan* is not in point.

Nor is there anything which militates against the view here taken in the further proposition insisted upon by appellant, that the 120 acres upon which Burton and Stones used this water were not riparian to the stream. Situate, as this tract was, a half-mile or more away from the stream, if it had been held by a title separate from and independent of the 1,280-acre tract, it would not have been riparian, and no portion of the waters of the stream would have been appurtenant to it.  But the 120 acres was a part of and never segregated from the 1,280 acres, all of which was riparian to the stream.  We do not understand *Lux* v. *Haggin*, 69 Cal. 255, as holding, as claimed by appellant, that only that portion of a larger tract bordering upon a stream is riparian thereto which is actually washed by the waters of the stream, or only so much thereof as the waters of the stream are sufficient to irrigate.  Such a rule, while it would limit the area of riparian lands to a comparatively infinitesimal quantity, would extend the rights of a riparian proprietor to whom the water might first come far beyond anything heretofore recognized or claimed for them.  It would recognize the right of such proprietor to consume, if he could, on his riparian lands, all the waters of the stream, for purposes of irrigation, without regard to the rights

of other proprietors below him, either for their natural wants or for irrigation. So far, the right of a riparian proprietor to the use of water for purposes of irrigation at all has been assumed, rather than determined, and has been properly regarded as among the last, though perhaps not the least important, of his riparian rights; one that must be always held in subordination to the rights of all other riparian proprietors to the use of water for the supply of the natural wants of man and beast, extended to the occupants of each and every tract held as an entirety, bordering upon the stream, whatever its extent. These natural wants supplied and protected, the right to a reasonable use of the surplus water by the riparian proprietor, in common with others in like situation, for purposes of irrigation, has been acknowledged and recognized, but it cannot be extended even by implication. Nor can th· area of the lands to which riparian rights are appurtenant be diminished, by the acts of a trespasser segregating for the time being the actual occupancy, without segregation of title. Nor can the use of all the waters of a stream upon 120 acres of land change the law, and establish it as a fact that there can be but 120 acres riparian to that stream, as claimed by appellant.

We do not deem it necessary to follow the counsel for appellant in their discussion of the question of the payment of taxes as one having any effect upon this case, nor do we find anything in any of the authorities cited in conflict with the views here expressed.

Judgment affirmed.

SHARPSTEIN, J., McFARLAND, J., PATERSON, J., THORNTON, J., and WORKS, J., concurred.