[Civ. No. 116. Third Appellate District.—June 17, 1907.]

HERCULES WATER COMPANY, Respondent, v. B. FERNANDEZ, Appellant.

EMINENT DOMAIN—CONDEMNATION OF WATER RIGHTS—INSUFFICIENT COMPLAINT—SPECIFIED TOWNS AND "OTHER PLACES" IN COUNTY. A complaint by a water company in an action of eminent domain, against the owners of riparian rights to condemn the same to public use for the purpose of supplying two specified towns "and of other places in said county" with water, the term "other places" is too indefinite to embrace either the whole county, or any particular body of inhabitants thereof, nor can those words be regarded as surplusage; but the complaint must be held insufficient as seeking the aid of the statute for an unauthorized purpose, and as being indefinite and uncertain as to the uses for which the condemnation was sought.

ID.—BLENDING OF LAWFUL AND UNLAWFUL PURPOSES.—Where the proceeding shows upon its face two distinct uses or purposes, one lawful and the other not, which are so inseparably blended in the petition and orders as not to be severable, it cannot be sustained; and an application to condemn property for purposes, part of which are within and part not within the act, will be bad *in toto.*

ID.—TERMS OF STATUTE—EXTENT OF USE.—The statute, besides allowing water to be condemned for public use in towns, villages, and incorporated cities, allows it to be condemned in behalf of canals, ditches, etc., for ''conducting or storing water for the use of the inhabitants of any county,'' not for the inhabitants of places in any county indefinitely described, or for the inhabitants of less than those of the entire county. All may not enjoy the use, but the use must be capable of enjoyment by all.

ID.—COMPLAINT—PUBLIC USE—FINDING.—A complaint seeking to condemn water rights for public use must state facts showing that the use is one of those enumerated in the statute. A mere general averment that the use for which the property is sought to be taken is a public use is insufficient; and the trial court cannot obviate the requirement of pleading by a finding that the use is a public use.

ID.—MEASURE OF DAMAGES—DEPRECIATION IN VALUE OF PROPERTY.—The measure of damages for the taking of the rights of a riparian owner for a public use is the difference in what the property was worth immediately before the appropriation, and what it was worth affected by the appropriation. The single fact to be determined is the depreciation in the value of the property affected by the taking away from it the water sought to be condemned, to be ascertained by competent and proper evidence.

APPEAL from a judgment of the Superior Court of Contra Costa County. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

Morrison & Cope, and Morrison, Cope & Brobeck, for Appellant.

Pillsbury, Madison & Sutro, for Respondent.

CHIPMAN, P. J.—Eminent domain. The complaint alleges corporate organization of plaintiff under the laws of this state, for the purposes, among others, of acquiring water rights, ''on one or more rivers, creeks or streams within the state of California; of acquiring, purchasing, erecting, constructing, holding, owning, improving and leasing dams, reser-

voirs, tanks, canals, flumes, aqueducts, ditches, pipe-lines and other water-ways or conduits and securing and impounding springs, streams and all other water-ways; of buying, selling, owning, or otherwise dealing in, water for domestic, irrigation, manufacturing and all other purposes; of furnishing, supplying and selling the same to any county, city and county, city, town, and the inhabitants thereof; of acquiring, constructing and maintaining reservoirs, tanks, canals, pipe-lines''; avers the ownership of water rights in the waters of Pinole creek, Contra Costa county, "being the right to divert and use the waters of said creek and to store the same for the purpose of supplying the inhabitants of the town of Pinole and of the town of Hercules and of other places in the said County of Contra Costa, with water for domestic and other necessary and useful purposes''; avers the ownership of a reservoir and pumping plant and pipe-line whereby said water is diverted from said creek and pumped into said reservoir; that it owns pipe-lines leading from said reservoir to various places in the towns named, "and elsewhere in said County" by means of which "it now supplies water for said purposes to the inhabitants of said town of Hercules and to the inhabitants of said town of Pinole, and by means of which it expects and intends to supply water for like purposes to the inhabitants of other places in said County''; that the uses and purposes for which the property, rights and easements already acquired have been and are being appropriated are public uses within the meaning of the law of this state; that it is necessary, in order to make effective use of the waters of said creek as aforesaid by means of dams erected across said creek at various places thereon above the lands of defendant, to impound all the waters of said creek in order to facilitate the taking all of the water of said creek at a point or points above the land of defendant, to wit: at the said pumping station and at other points on said creek, and to store the same in said reservoir of plaintiff; that plaintiff is the owner of all the riparian lands and rights upon said creek which are affected by the diverting of said water, as aforesaid, except the premises hereinafter described. The complaint then describes the lands of defendant Fernandez and other defendants alleged to be affected by the condemnation sought, and alleges that

said creek flows through each parcel of land thus described, to the waters of which defendants are the owners of riparian rights; "that for the purpose of supplying the inhabitants of the town of Hercules and of the town of Pinole and of other places in said County of Contra Costa with water as aforesaid, it is necessary that the plaintiff should acquire, have and hold an easement in and to all the waters of said Pinole Creek . . . for the aforesaid use and purpose of supplying the inhabitants of the said towns named, and of other places in said county of Contra Costa with water."

The defendants other than defendant Fernandez made default, which was duly entered. Defendant Fernandez demurred to the complaint generally for insufficiency of facts, and specially on the grounds of uncertainty, ambiguity and unintelligibility.

The demurrer was overruled and defendant Fernandez answered, denying specifically the material allegations of the complaint.

The findings follow closely the allegations of the complaint, the court finding, among other facts, that plaintiff, at the commencement of the action, was supplying water and since has been supplying water as alleged to the two towns named and "expects and intends to supply water for like purposes to the inhabitants of said towns and of other places in said County"; the court also finds that, in order to make effective use of said water sufficient to supply the inhabitants of said two towns "and of other places in said County with water," it is necessary to impound the waters of said creek as alleged in the complaint; that for the purpose of supplying the inhabitants of said towns "and other places in said County of Contra Costa with water it is necessary that plaintiff acquire . . . an easement to all the waters of said Pinole Creek, to wit": the right by means of dams at various places above defendant's lands and store the same, "for the aforesaid use and purpose of supplying the inhabitants of the town of Hercules and of the town of Pinole and of other places in said County of Contra Costa with water."

In assessing the damages the court found the total damages to be $2,675.00, as follows: 1. That the rights and easements belonging to the defendant Fernandez are fixed at $1,000; 2. The damage to accrue to the first, second and third parcels

of his land, as described in the complaint, is fixed at $25 each, and to the fourth parcel it is fixed at $1,600, the last three items of damage by reason of the severance of his said riparian rights from said parcels of land. The findings generally follow the allegations of the complaint and the judgment follows the findings.

Defendant Fernandez appeals from the judgment on bill of exceptions.

It is urged by appellant that the general demurrer should have been sustained, for that it is sought by the proceedings to condemn water for the use of places in the county which are not described as cities, towns or villages or otherwise as required by statute law. The special demurrer also points out that the complaint is ambiguous, uncertain and unintelligible, among other grounds, because it cannot be ascertained therefrom whether it is necèssary to condemn the said water rights for the purpose of supplying the inhabitants of the towns named, or for the purpose of supplying the inhabitants of "other places" in said county.

Section 1238 of the Code of Civil Procedure provides as follows: "Subject to the provisions of this title, the right of Eminent Domain may be exercised in behalf of the following uses: 3. . . . canals, aqueducts, reservoirs, tunnels, flumes, ditches or pipes for conducting or storing water for the use of the inhabitants of any county, incorporated city, or city and county, village or town. . . ." Section 14, article I of the constitution prohibits the taking or damaging of private property for public use without just compensation having first been made. We are, however, to look to the legislature to ascertain what constitutes a public use and for the authority to exercise the right of taking or damaging private property for a public use. The only limitation upon this power is contained in the constitution. (*Lindsay Irr. Co.* v. *Mehrtens*, 97 Cal. 676, [32 Pac. 802].) Section 1241 of the Code of Civil Procedure provides that before private property can be taken it must appear "that the use to which it is to be applied is a use authorized by law," and the uses so authorized are those specified in the statute (Code Civ. Proc., sec. 1238), and none others.

The words "the inhabitants of," as used in the complaint, we think should be read in connection with the words "other

places in the County of Contra Costa,'' and it was not necessary to repeat them before the latter words. But these latter words, as used in the complaint, are clearly in addition to, and were intended to embrace, territory different from that of a town, village, city or incorporated city and county. Unless, therefore, a construction can be given to these words which would make them equivalent to an averment that the purpose was to supply with water the inhabitants of the county of Contra Costa, we do not see how the complaint can be upheld as seeking to condemn for a public use. Such construction, however, we think unwarranted. ''Other places'' cannot mean all places in the county other than the towns of Hercules and Pinole, nor can the complaint be held to mean all the inhabitants of the county other than said towns. The terms are too indefinite to embrace either the whole county or any particular body of the inhabitants who are to be supplied with water. Apparently the plaintiff is to be the exclusive judge of whom and what places it will supply with water, and no reciprocal right attaches to any particular group of the inhabitants of such places to demand service of plaintiff. ''The other places might be,'' as suggested by appellant, ''factories, such as that of the California Powder Works, or they might be farms belonging to one individual, or hotels, stores, shops, residences, or innumerable other private places and establishments.'' Nor do we think by this illustration ''that counsel are sticking in the bark,'' as replied by respondent. It is true that in supplying these places plaintiff would be engaged in supplying water to some of the inhabitants of the county of Contra Costa, but would plaintiff be under obligation to supply the inhabitants of the whole or any definite part of the county? It was said in *Lindsay Irr. Co.* v. *Mehrtens,* 97 Cal. 676, [32 Pac. 802], at page 681: ''It is not necessary that the entire public shall enjoy the use, or even that it be capable thereof, but the use must be capable of enjoyment by all who may be within the neighborhood, and there must be within that neighborhood so great a number of the entire public as to destroy its character as a private use.''

The statute authorizes the exercise of the right of eminent domain (except as to towns, villages and incorporated cities), in behalf of canals, ditches, etc., for ''conducting or storing

water for the use of the inhabitants of any county," not for the inhabitants of places in any county, indefinitely described, or for the inhabitants less than those of the entire county. All may not enjoy the use, but the use must be capable of enjoyment by all. In the Lindsay case, *supra,* the court said: "Whether the particular region is a farming neighborhood, and whether the supplying of water to that neighborhood constitutes a public use, are questions of fact, which must be determined by the court before whom the proceeding is had, and its decision thereon must be held conclusive upon this court to the same extent as in other cases where it is called upon to determine matters of fact." It is hence urged by respondent that as there is a finding to the effect, as is claimed, that the supplying of water to the inhabitants of the town of Hercules and of the town of Pinole *and other places in said county of Contra Costa,* constitutes a public use, is conclusive upon this court. The finding of the court was not that to supply water to "other places in said county" was a public use, but that "the rights and easements already acquired and owned have been, and at the time of the commencement of this action were and now are being, appropriated, are public uses." But had the findings gone to the extent claimed, we do not think it would have been conclusive upon this court. The statute under examination in the case just cited made the supplying of farming neighborhoods with water a public use. The question involved was as to the sufficiency of the evidence to sustain the judgment that the particular land constituted a farming neighborhood. The court did not mean that the trial court could conclusively determine what the legislature alone can determine. It is not sufficient for the pleader to allege that the use for which property is to be taken is a public use. The complaint must show that the use is one of those enumerated in the statute, and the trial court cannot obviate this requirement by finding the use to be a public use. It was said in the case last cited: "Whoever, under the claim of agency of the state, would deprive the owner of any of his property by virtue of the exercise of eminent domain must show not only that the use for which he seeks to appropriate it is a public use, but also that the legislature has authorized the taking of property for that particular use, and in the mode in which

he is seeking to appropriate it.   The legislature must designate, in the first place, the uses in behalf of which the right of eminent domain may be exercised, and this designation is a legislative declaration that such uses are public and will be recognized by the courts; but whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of the case.''   As we understand the decision: If, for example, a question of fact had arisen as to whether or not Hercules is a town or village, it would be for the court to determine that fact and its finding upon conflicting testimony would be conclusive. But if the legislature had not provided for the condemnation of riparian rights for the benefit of towns or villages, no right of condemnation could rest upon such finding by the trial court, even with the added finding that the supplying of water to such towns was a public use.   A corporation can no more condemn property for purposes not declared to be public uses than for purposes without the power conferred by the corporation charter; and that this latter cannot be done was held in *Chicago & N. W. Ry. Co.* v. *Galt*, 133 Ill. 657, [23 N. E. 425, 24 N. E. 674], conceded by respondent to be good law.

Mr. Lewis says: ''The petition should show the use or purpose for which the property is desired, and that it is within the statutory powers conferred.   It should show a clear right to condemn the property described.''   (2 Lewis on Eminent Domain, sec. 353.   See, also, 7 Encyclopedia of Pleading and Practice, p. 526.)   ''Where the proceeding shows upon its face two distinct uses or purposes, one lawful and the other not, which are so inseparably blended in the petition *and orders* as not to be severable, it cannot be sustained.''   (7 Encyclopedia of Pleading and Practice, p. 527.)   Here, both by averments of the complaint and by the findings and judgment of the court, a necessity is alleged and found for the condemnation to supply not only the inhabitants of the towns named but also of other places in the county of Contra Costa.

Nor can the terms ''other places'' be disregarded as surplusage or stricken out by amendment of the judgment.   The court found that the water was necessary not only for the inhabitants of the towns named, but that in order to make effective use of said waters sufficient to supply the inhabitants

of said two towns *and other places in said county,* it is necessary that plaintiff acquire an easement to *all the waters of said creek.* We cannot say that the trial court would have found it necessary to condemn all the waters of the creek if plaintiff had not expressed an intention in its complaint to use the waters of the creek elsewhere than in said towns and had asked for a decree to that effect.

Mr. Lewis cites cases holding that where an act combined a private use with a public use in a way that the two cannot be separated, the whole act is void. He adds: "So an application under an act to condemn property for purposes, part of which are within and part not within the act, will be bad *in toto.*" (1 Lewis on Eminent Domain, sec. 206.)

If plaintiff had no right to condemn the riparian rights of defendant Fernandez to supply water to the inhabitants of other places than the towns named, the complaint was indefinite and uncertain in the particular claimed as well as seeking the aid of the statute for an unauthorized purpose.

A private corporation formed for private gain, under guise of serving the public, should not be permitted to take private property through the extraordinary remedy of eminent domain, and under an assumed agency of the state, upon any strained or doubtful construction of the statute declaring what are public uses.

Error is claimed arising out of the method adopted by the trial court in assessing the damages. As the cause must be remanded for a new trial, we deem it best to notice this point.

Over defendant's objection the court allowed the witness McMahon to testify that the value of water rights all along the banks of Pinole creek was about $2 per running foot, apparently without regard to the extent of the land at different places lying back of the creek. There were several tracts of land of appellant, marked on the map used at the trial, of various acreage—in all about one hundred and eighty-two acres through which the creek flowed for a distance of about eleven hundred and ninety feet. The damage awarded was $2,675, made up as shown above. Whether appellant was injured by this particular testimony is not clear, for the court seems to have assessed the damage to all the land by reason of the severance of the riparian rights, and in addition allowed a separate sum for the rights and easements belonging

to appellant.  In the present case the riparian rights alone were sought to be condemned and the water was to be taken at a point above appellant's land.  No part of his land was sought to be taken.

It seems to us that the true rule is stated by respondent— that the measure of damage to a riparian owner by the appropriation or diversion of the waters is the depreciation in the value of the property affected by the taking.  The question was thus disposed of in *Lee* v. *Springfield Water Co.,* 176 Pa. St. 223, [35 Atl. 184], where the court said: "The defendant had seized a part of the waters of Crum Creek for the supply of its water works.  The plaintiffs are mill owners on the same stream, and below the point at which the water is taken.  The object of this action is to ascertain the damages sustained by the plaintiffs by reason of the appropriation of a portion of the water of the stream that had previously flowed through their property, and been used by them to aid in propelling their machinery.  The true measure of damages to be applied in all cases of a taking by virtue of eminent domain is involved in no doubt.  It is easy of application.  It is the depreciation in value of the property affected by the taking.  Where land is taken this has been said so frequently that it would be a work of supererogation to cite the cases in which the doctrine has been stated and applied.  It was applied in *Miller* v. *Windsor Water Co.,* 148 Pa. St. 429, [23 Atl. 1132], where, as in this case, a water company had appropriated water, and a lower riparian owner complained that he was injured by the appropriation.  It is the proper measure of the plaintiff's damage in this case.  The jury should inquire what the property affected was fairly worth immediately before the water was appropriated, and what it was worth affected by the appropriation.  The difference, if any, is the loss actually sustained, and therefore the measure of the plaintiff's right to recover damages."

It was also so held in *City of Syracuse* v. *Stacey,* 169 N. Y. 231, [62 N. E. 354].

Appellant claims that the extent of the riparian right is to be measured by the area of land adjacent to the stream and within the watershed; citing *Alta Land etc.* v. *Hancock,* 85 Cal. 219, 229, 230, [20 Am. St. Rep. 217, 24 Pac. 645] ; *Wiggins* v. *Muscupiabe L. & W. Co.,* 113 Cal. 182, 195, [54 Am.

St. Rep. 337, 45 Pac. 160]. There seems to be but little, if any, disagreement between counsel upon the rule. The point made by appellant is that the measurement of damages by the running foot was, in view of the facts of the case, an improper method of ascertaining the compensation, and upon the point we agree with appellant. Such method wholly disregards the extent of the land adjacent to the stream and within its watershed and owned by the defendant. The riparian right to a narrow strip of land a hundred feet wide would thus have the same value as it would have if the body of land had a width of a thousand feet. Then again, the water frontage in question embraced land lying along a creek of fresh flowing water and land also whose frontage was on tide water unfit for domestic use. It is not probable that the riparian right was of equal value foot by foot of all this frontage.

The single fact to be determined was the depreciation in the value of the property affected by the taking away from it the water sought to be condemned, to be ascertained, of course, by competent and proper evidence.

The judgment is reversed, with directions to sustain the demurrer, plaintiff to have leave to amend its complaint if so minded.

Hart, J., and Burnett, J., concurred.