[No. 13667.   In Bank. — June 18, 1892.]

## THE CITY OF SANTA CRUZ, RESPONDENT, v. JAMES ENRIGHT ET AL., APPELLANTS.

EMINENT DOMAIN — CONDEMNING USE OF WATER — MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — GENERAL LAWS. — Section 1001 of the Civil Code and section 1238 of the Code of Civil Procedure providing for the acquisition of private property by "any person, without further legislative action," through the exercise of the right of eminent domain, for the use of "canals, aqueducts, flumes, ditches, or pipes for conducting water for the use of the inhabitants of any county, incorporated city, or city and county, village, or town," are general laws within the meaning of section 6 of article XI. of the constitution, providing that cities shall be subject to and controlled by general laws, and are applicable to municipal corporations formed before, as well as to those formed after, the adoption of the constitution of 1879.

ID. — NECESSITY — DISTANCE OF SUPPLY — NEARER WATERS OWNED BY WATER COMPANY — INSTRUCTIONS. — Where the evidence shows that the waters of a creek from which a water company receives its supply are insufficient in quantity to supply the wants of the inhabitants of a city to which the company furnishes the water, during the summer months, and a portion of them are also inferior in quality, and that the population of the city is steadily increasing, and that the waters of the stream sought to be condemned by the city are excellent in quality, and abundant in quantity, and of sufficient elevation, the fact that the stream sought to be taken is further from the city than the streams from which the water company take their supply, although a matter to be considered, is not controlling upon the question of necessity, and where the instructions of the court as to the power to condemn, and the necessity claimed to exist, are correct, it is not error to refuse instructions predicated controllingly upon the question of distance, and upon the power of the city to condemn the waters owned by the water company.

ID. — WATER RIGHTS — PRIVATE LANDS — RIPARIAN OWNERSHIP — APPROPRIATION. — A riparian proprietor of private lands cannot acquire any right in the waters of the stream by mere appropriation.

ID. — PUBLIC LANDS — PRESUMPTION — BURDEN OF PROOF. — Where it does not appear whether the lands through which a stream ran at the time when a riparian proprietor claims to have acquired a right by appropriation were private or public property, it will not be presumed that they

were public lands, but the burden of proving that they were such lands devolves upon the claimant.

Id. — Evidence — Prescriptive Right — Notice Claiming Water — Error without Prejudice — Presumption upon Appeal. — Where the evidence showed without conflict that the defendant had acquired a prescriptive right to the use of the waters of the creek sought to be condemned, and the jury were fully and fairly instructed in reference thereto, it must be assumed, upon appeal, that the jury allowed the value of the prescriptive right, and the action of the trial court in excluding a notice which had been posted up in a conspicuous place by the defendant's grantor at the place where the water was diverted, and which tended to show that the defendant claimed the right to divert the water adversely to all other claimants, although erroneous, is not prejudicial.

Id. — Evidence — Effect of Irrigation — Qualification of Expert. — In a proceeding to condemn land, it is proper for the court to exclude the testimony of a witness as to his opinion, as an expert, as to the effect of irrigation upon the lands owned by the defendant, where it appears that the experience of the witness had been confined to another county, and he had never been upon the land in question, except for a period of one day in the winter, and it was not shown that the conditions, as to the climate, soil, topography, and rainfall, were the same in the county where the land was situated as they were in the county where the witness resided.

Id. — Judicial Notice — Comparison of Conditions in Different Counties. — The court will not take judicial notice whether the conditions as to climate, soil, topography, and rainfall are the same in one county as in another.

Appeal from a judgment of the Superior Court of Santa Cruz County, and from an order denying a new trial.

The following are the fifth and sixth instructions requested by the defendants and refused by the court: 5. It is a fact admitted in this case that the Santa Cruz Water Company is a corporation organized for the purpose of supplying the city of Santa Cruz and its inhabitants with pure, fresh water, and that said company has acquired, and now holds title to, and the right to divert, the waters of Major's Creek and both branches of Branciforte Creek, for the purpose of so supplying said city and its inhabitants. In view of this admitted fact, the court instructs you that the city of Santa Cruz has the power to acquire from said company the waters of said streams, either by purchase or condemnation; and if you find, from the evidence, that the waters from

said streams are sufficient to supply said city and the inhabitants thereof with water, and you further find that both said streams are in much closer proximity to said city than Laguna Creek, and that they can be brought·into and distributed through said city at less expense than the waters of Laguna. Creek, then the court instructs you that the taking and acquisition of the waters of Laguna Creek is not, within the meaning of the law, necessary; and you will find a verdict for the defendants. 6. If the jury find, from the evidence, that the waters of Laguna Creek, at the point at which it is proposed to divert them, are eleven miles distant from the city of Santa Cruz, and they further find that much nearer than this to said city are the waters of Major's Creek, and of both branches of Branciforte Creek, and that said Major's Creek and Branciforte Creek afford a perennial flow of pure, fresh water, sufficient to supply said city and its inhabitants with pure, fresh water, and the jury further find that the waters of Major's Creek and Branciforte Creek have already been diverted and appropriated to, and are being used for, the purpose of supplying said city and the inhabitants thereof with water, then the court instructs you that the acquisition of the waters of Laguna Creek is not necessary for the supply of said city and its inhabitants, and the jury will find a verdict for the defendants. Further facts are stated in the opinion of the court.

*D. M. Delmas,* and *Joseph H. Skirm,* for Appellants.

The court erred in excluding evidence of the acts done in 1873 by the defendant Enright's predecessor, Gushee, the then owner of the land, for the purpose of appropriating the waters of Laguna Creek to his use. In order for defendant Enright to make out his title by prescription, it was necessary for him to prove that the right to the diversion and use of the water had been asserted from the beginning under a claim of title, with the knowledge and acquiescence of the person having a prior right. (*American Co.* v. *Bradford,* 27 Cal. 361.)

The rejected evidence was material and relevant to prove that the right had been so asserted. (*Alta Land Co.* v. *Hancock*, 85 Cal. 219, 223, 224; 20 Am. St. Rep. 217; *Frederick* v. *Dickey*, 91 Cal. 358.) There was error in the court's refusal to grant defendant's instruction relating to the rights acquired by him and his predecessors as prior appropriators of the waters of Laguna Creek; and in instructing the jury that rights to water cannot, in this state, be acquired by appropriation. (*Kimball* v. *Gearhart*, 12 Cal. 27; *De Necochea* v. *Curtis*, 80 Cal. 397; *Burrows* v. *Burrows*, 82 Cal. 564; *Artman* v. *Dixon*, 13 Cal. 38.) The presumption of law is, that in 1872 and 1873, when these rights of appropriation are claimed to have had their origin, the lands through which this stream ran were public lands of the United States. (*Burdge* v. *Smith*, 14 Cal. 380; *Smith* v. *Doe*, 15 Cal. 101.) There is nothing in the record to show that at the time of the appropriation of the waters of this creek by defendant's predecessor, Gushee, the creek ran "through private property." Upon public lands of the United States, water rights may be acquired by appropriation. (*Burrows* v. *Burrows*, 82 Cal. 564; *De Necochea* v. *Curtis*, 80 Cal. 397; *Kimball* v. *Gearhart*, 12 Cal. 27.) The court erred in rejecting the testimony of the witness Ray upon the question of irrigation, and its effects upon the land in question, and whether or not the soil was benefited by it, as he was clearly an expert and entitled to testify, (*Ellis* v. *Tone*, 58 Cal. 289; *Buffum* v. *Harris*, 5 R. I. 243; Code Civ. Proc., sec. 1870, subd. 9.) An expert, as the word imports, is one having had experience. (*Ardesco Oil Co.* v. *Gilson*, 63 Pa. St. 146; *Nelson* v. *Sun Mut. Ins. Co.*, 71 N. Y. 453; *Page* v. *Parker*, 40 N. H. 59; *Dickenson* v. *Inhabitants*, 13 Gray, 550.) Eminent domain is the right of the people or government to take private property for public use. (Code Civ. Proc., sec. 1237; *Gilmer* v. *Lime Point*, 18 Cal. 229; *Beetman* v. *R. R. Co.*, 3 Paige, 45; 3 Story on Constitution, p. 117.) Statutes for the exercise of the right of eminent domain are strictly construed. (*Spring Valley W. W.* v. *San Mateo W. W.*, 64

Cal. 131; *Rensselaer etc. Co. v. Davis*, 43 N. Y. 146.) The power of eminent domain is to be strictly construed, (*San Francisco W. Co. v. Alameda W. Co.*, 36 Cal. 639.) To justify the exercise of the right, a necessity to invade the private domain for the benefit of the public must be clearly shown. (*Jordan v. Woodward*, 40 Me. 323; Angell on Watercourses, sec. 459; Lewis on Eminent Domain, sec. 393; *Paul v. Detroit*, 32 Mich. 108, 119.) Hence, if sufficient property have already been taken from the region of private domain and dedicated to supply the public use, more than that cannot be taken. More than is necessary would be mere cumulation, and such cumulation is never permitted. (*Spring Valley W. W. v. San Mateo W. W.*, 64 Cal. 133; *Southern Pacific R. R. Co. v. Raymond*, 53 Cal. 228; *Olmsted v. Proprietors*, 46 N. J. L. 495, 500; *Lecone v. Police Jury*, 20 La. Ann. 308.) In order to justify the taking, it is not sufficient to show that it is necessary in the carrying out of a given scheme. That the scheme itself is one necessary for the public use must also be established. (*People v. Brighton*, 20 Mich. 71; *Mansfield etc. Co. v. Clark*, 23 Mich. 519; *Grand Rapids etc. R. R. Co. v. Driele*, 24 Mich. 409; *Powers's Appeal*, 29 Mich. 509.) Whether the improvement was necessary, was a question for the jury. (*Houghton v. Huron Copper Min. Co.*, 57 Mich. 547.)

*Fox & Kellogg*, and *W. D. Storey*, for Respondent.

There was no error in the refusal of the court to give the instructions asked for by the defendant. The charge of the court must be taken as a whole. (*Davis v. Button*, 78 Cal. 247; *People v. Lee Chuck*, 78 Cal. 315.) The charge of the court, taken as a whole, is full, protects the rights of the defendants to the extreme limit of the law, and each and every sentence of it is supported by the decisions of this court, as will be seen by reference to the following cases and pages: *Crandall v. Woods*, 8 Cal. 141, 142; *Ferrea v. Knipe*, 28 Cal. 341; 87 Am. Dec. 128; *Ellis v. Tone*, 58 Cal. 289; *Lux v. Haggin*, 69 Cal. 255–259; *Learned v. Tangemen*, 65 Cal.

334; *Union Water Company* v. *Crary*, 25 Cal. 504; 85 Am. Dec. 145; *American Company* v. *Bradford*, 27 Cal. 361–367; *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554; *Hanson* v. *McCue*, 42 Cal. 310; 10 Am. Rep. 299; *Anaheim Water Co.* v. *Semi-tropic Water Co.*, 64 Cal. 185; *Feliz* v. *Los Angeles*, 58 Cal. 73; *Thomas* v. *England*, 71 Cal. 456; *Alta Land and Water Co.* v. *Hancock*, 85 Cal. 223, 224; 20 Am. St. Rep. 217. The court correctly laid down the law on the subject of necessity. (*City of Pasadena* v. *Stimson*, 91 Cal. 238; *State* v. *Mayor etc.*, 23 Atl. Rep. 129.) A municipal corporation has the right to acquire property by condemnation for any of the purposes mentioned in section 1238 of the Code of Civil Procedure. (*City of Pasadena* v. *Stimson*, 91 Cal. 238; *State* v. *Mayor etc.*, 23 Atl. Rep. 129.)

PATERSON, J. — This is an action to condemn the waters of Laguna Creek, a small stream in Santa Cruz County, for the purpose of supplying the wants of plaintiff and its inhabitants. The defendant Enright is the owner of a tract of land lying below the point of the proposed diversion, and bounded on the northwest for about three miles by the creek. The defendant Enright claims that there is neither any authority nor any necessity for the exercise of the power of eminent domain; but that if such authority exist, he is entitled to compensation for the injury he will sustain, not only as a riparian proprietor, but as a prior appropriator and owner by prescription. The jury found in favor of the plaintiff on the main issues, and assessed the defendant Enright's compensation at eight thousand dollars, and the damages to be paid to each of the other defendants who claimed some interest in the property at one dollar.

The defendants Enright and Sylva moved for a new trial, the motion was denied, and they have appealed from the order and from the judgment.

It may be conceded, for the purposes of this decision, that the charter of the city of Santa Cruz confers no authority upon the municipal authorities to condemn water

for the use of the inhabitants of the city.    Its warrant
for the exercise of the power is found in the constitution
and general laws of the state.    Section 6 of article XI.
of the constitution provides that " cities or towns here-
tofore or hereafter organized, and all charters thereof
framed or adopted by authority of this constitution,
shall be subject to and controlled by general laws."    Sec-
tion 1001 of the Civil Code provides that " any person
may, without further legislative action, acquire private
property for any use specified in section 1238 of the
Code of Civil Procedure, either by consent of the owner,
or by proceedings had under the provisions of . . . .
the Code of Civil Procedure."    Section 1238 of the Code
of Civil Procedure provides that the right of eminent
domain may be exercised in behalf of the following uses,
" 3. . . . . canals, aqueducts, flumes, ditches, or pipes
for conducting water for the use of the inhabitants of
any county, incorporated city, or city and county, vil-
lage, or town."

These provisions of the codes are "general laws," ap-
plicable to municipal corporations which were formed
before, as well as to those which were formed after, the
adoption of the constitution of 1879.    (*Thomason* v.
*Ashworth*, 73 Cal. 73; *People* v. *Henshaw*, 76 Cal. 446;
*Pasadena* v. *Stimson*, 91 Cal. 238.)    In the case last cited,
our chief juctice, speaking for the whole court, said:
" It follows, therefore, that under this general law, — gen-
eral in the fullest and widest sense of the term, — any
public or private corporation, or any natural person,
may, for any of the uses defined in section 1238 of the
Code of Civil Procedure, acquire private property with-
out the consent of the owner. . . . . But the mode of
exercising the power of eminent domain, and the con-
ditions upon which it may be invoked, are no part of
municipal organization.    They are the subject of gen-
eral laws, applicable to every person alike, and the legis-
lature has no power to make arbitrary discriminations
in this respect between different classes of persons."
Although the precise point to which these remarks were

addressed in that case was the right of the legislature to impose upon cities of the fifth and sixth classes the duty of making an effort to agree with the owner as a condition precedent to the exercise of the power of eminent domain, yet the principles there announced are as applicable to the questions before us herein. If section 1001 of the Civil Code and section 1238 of the Code of Civil Procedure are general laws for one purpose, they are general laws for all purposes within the scope of their provisions; and the act of March 19, 1889, which is also a general law, provides how indebtedness for such works may be incurred and paid by municipal corporations. (Stats. 1889, p. 399.)

The court did not err in refusing to give the fifth and sixth instructions proposed by the defendant relating to the question of necessity. The evidence shows that the waters of the creeks from which the Santa Cruz Water Company receives its supply are insufficient in quantity, and a portion of them inferior in quality. They are nearer the city than Laguna Creek, and in the winter season afford an abundant supply of water; but in the summer months a large portion of the city is left without water sufficient for domestic purposes, and the population of the city is steadily increasing. Distance is, of course, a matter to be considered, but it is not controlling.

One of the engineers testified as follows: "There are four elements to be considered in determining the availability of a stream for supplying a city: 1. Quality; 2. Quantity; 3. Elevation; and 4. Distance. The waters of the Laguna Creek are excellent in quality. Their quantity is abundant. Their elevation is sufficient; and their distance,—it is the nearest source of supply to said city, after Major's Creek and both branches of Branciforte Creek."

The instructions of the court on the questions as to the power to condemn, and the necessity claimed to exist, were full, clear, and correct, and, as there was no error in the rulings of the court in admitting or exclud-

ing evidence, we are clearly satisfied that the judgment, so far as this branch of the case is concerned, should be affirmed.

It is claimed that the court erred in instructing the jury that the defendant could not acquire any right in the waters of the creek by mere appropriation. This contention cannot be sustained. (*Alta Land Co.* v. *Hancock*, 85 Cal. 223; 20 Am. St. Rep. 217.) It does not appear whether the lands through which the stream ran at the time defendant claims to have acquired his right of appropriation were private or public property. If they were public lands of the United States at that time, we think it devolved upon the defendant to show that fact. It is contended that the presumption of law is, that in 1873 the lands were public lands of the United States, and *Burdge* v. *Smith*, 14 Cal. 380, and *Smith* v. *Doe*, 15 Cal 101, are cited in support of the proposition. We do not think such a presumption can be indulged in favor of the defendant upon his claim of right by appropriation. The decisions in the cases referred to were based upon the provision in the act of March 26, 1856, for the protection of settlers, and to quiet land titles, which reads as follows: "All lands in this state shall be deemed and regarded as public lands, until the legal title is shown to have passed from the government to private parties."

During the examination of Gushee, defendant's grantor, a notice signed by Gushee, and dated April 14, 1873, stating that said Gushee claimed the water flowing in Laguna Creek to the extent of 125 inches under a four-inch pressure, for irrigation and domestic purposes, was offered in evidence, and upon objection of the plaintiff, was excluded, to which ruling the defendant excepted. The defendants offered to show that the notice had been posted in a conspicuous place at the point where Gushee subsequently built his flume and diverted the waters of the creek, and that within ten days a copy of the notice was recorded. The offer was rejected, and the defendants again excepted. We think this ruling of the court

was erroneous. The notice was admissible on the question of title by prescription. It tended to show that defendant claimed the right to divert the water adversely to all other claimants. In view of the undisputed evidence, however, we do not see how the error could operate to the prejudice of the defendant. As stated by counsel himself, in discussing another proposition, "the case was such as to leave no room for any possible doubt on the part of the jury. The evidence upon the adverse character of the diversion and use of the water by the defendant and his predecessor, Gushee, for a period of over fifteen years, was all one way. There was no conflict on the subject, — nothing which could leave any room for doubt. The witness Gushee, the original owner, testified: 'The diversion of the water, for the purposes that I have mentioned, has been continued by me uninterruptedly from the time I commenced in 1873 or 1874 until I sold the land to Enright. . . . . I diverted that water from the beginning, under a claim of right, openly and notoriously. All my neighbors knew of it, I suppose. No one ever objected to my doing so. I claimed that right as against everybody else on the stream.' The defendant Enright testified that 'he had continued to divert and use upon said land the waters of Laguna Creek, by means of the flume and ditch mentioned; that said use had been uninterrupted, open, notorious, under a claim of right against the whole world.' No witness whatever was called to contradict this, or to show that the use of the water was by permission, expressed or implied, or was otherwise than adverse." There is not a word of evidence in the record tending to impeach this statement. It is not claimed that Gushee diverted the water under a license from any one. Gushee stated that he had no grant from any owner of the land upon the stream to divert the water, nor any permission from any one to do so. Under these circumstances, the defendant was entitled to an instruction directing the jury to find that he had fully sustained by proof his allegation of title by adverse use, and it would have been

error if such an instruction had been refused. The evidence being all one way — there being no room for doubt, as stated — on the question of adverse use of the water, we think the ruling of the court could not possibly operate to the prejudice of the defendant. The evidence offered would have been superfluous; it could have added nothing to the case which the defendant had already made on that subject. The jury were fully and fairly instructed upon all of the questions involved in the defendant's title by prescription, and we must assume that they properly considered the evidence relating thereto, and included in their assessment of damages the value of defendant's prescriptive right.

We cannot say that the court erred in excluding the testimony of the witness Ray, called on behalf of the defendant. He was requested to give his opinion as an expert as to the effect of irrigation upon the lands owned by the defendant. Counsel for plaintiff objected to the question, on the ground that the witness was not shown to be competent to testify. It appeared that the experience of the witness had been confined to the county of Santa Clara, and that he had never been upon the tract of land owned by the defendant, except for a period of one day in the winter prior to the time of the trial. To entitle the witness to testify, it ought to have been shown that the conditions as to climate, soil, topography, and rainfall were the same in the mountains of Santa Cruz as they were in the southern part of Santa Clara County, where the witness resided. The court cannot take judicial notice of such matters.

We have carefully examined the instructions given to the jury, and while there are two or three sentences obnoxious to criticism, when considered independent of the context, we think the charge of the court fairly presented the law applicable to the questions involved, and that the jurors were not misled by the expressions criticized by appellant.

Judgment and order affirmed.

McFARLAND, J., SHARPSTEIN, J., DE HAVEN, J., and GAROUTTE, J., concurred.

HARRISON, J., did not participate in the foregoing decision.

Rehearing denied.