[Civ. No. 628.  Third Appellate District.—May 14, 1910.]

NORTHERN LIGHT AND POWER COMPANY, Appellant,
v. HENRY STACHER et al., Defendants; MARTHA
SHERIDAN, J. R. HUNT, and WARREN G. ATKINS,
Respondents.

EMINENT DOMAIN—ELECTRIC LIGHT AND POWER COMPANIES—NECESSITY
FOR TAKING—FUTURE NEEDS OF PUBLIC.—Electric light and power
companies, like other public service corporations, have a right, and it
is their duty in determining the necessity to condemn the property
sought in eminent domain, to anticipate future needs of the
public. They cannot reasonably be required to limit their preparations for future demands by their ability to provide for them out
of the present supply. New uses for electricity are constantly being discovered and applied. The supply which in the same community would at present be sufficient might be insufficient in a
short time.

ID.—PLEADING—EXTENT OF FACILITIES OF PRESENT EQUIPMENT NOT REQUIRED.—Public service corporations cannot state with certainty to
what extent their facilities to serve the public will be availed of;
nor should they be required to determine in advance and set forth
in their complaint that their present equipment is insufficient to meet
the needs of the people.

ID.—EVIDENTIARY MATTER.—The requirement that the particular property sought should be available, and that it can be used for the
purposes desired, and that it is necessary to meet the public needs,
are matters, the particular facts in support of which are evidentiary,
rather than subjects of pleading.

ID.—SUFFICIENCY OF COMPLAINT AS TO NECESSITY.—A complaint alleging in substance that a large number of people are without electricity, whose needs in that regard the plaintiff alleges its desire and purpose to supply, and seeking to condemn necessary water power for such use, is sufficient to show the necessity for the taking.

ID.—BURDEN OF PROOF — BURDEN OF PLEADING NOT COMMENSURATE.—The burden of proving the issue of necessity is upon the plaintiff. The evidence upon which he relies in making such proof may or may not be sufficient when subjected to the proper test at the trial. But no burden rests upon him to state all the facts he intends to prove in order that the complaint may stand the test of a demurrer. No evidentiary matter should be stated in the complaint.

ID.—POWER OF ELECTRIC LIGHT AND HEAT COMPANIES TO CONDEMN WATER POWER—CONSTRUCTION OF CODE.—When the right of eminent domain is expressly conferred by section 1238 of the Code of Civil Procedure in behalf of canals, reservoirs, etc., "from sources other than a natural lake," for "supplying, storing and discharging water for or in connection with the operation of machinery, for the purpose of generating and transmitting electricity," and section 1240, properly construed, includes riparian rights to water as the subject of condemnation, it appears that water is as essential to the use of canals or reservoirs as is land, and reading sections 1238 and 1240 together, "water may be taken by the right of eminent domain in behalf of canals and reservoirs, in connection with the operation of machinery for the purpose of generating and transmitting electricity."

ID.—WATER PART OF REAL PROPERTY TO BE CONDEMNED.—Where land is condemned for a reservoir, if there is a water right which is part of the land, it may be condemned with it. Water flowing over land is real property and may be condemned for any public use specified in section 1238 of the Code of Civil Procedure.

ID.—RIPARIAN RIGHTS—CONDEMNATION FOR ELECTRIC POWER.—Riparian rights in a stream of water may be condemned for public use for electric power by electric light and power companies.

ID.—SUFFICIENCY OF COMPLAINT—CERTAINTY OF RIGHTS TO BE CONDEMNED.—Where the complaint definitely describes the land of all of the defendants by legal subdivisions, and alleges that "the waters of Old Cow creek flow over, along and upon said land," and that "it is necessary that plaintiff shall appropriate, take and use all riparian rights of defendant to and connected with the waters of said Old Cow creek," and it prays for the condemnation of the riparian rights therein, it shows with reasonable certainty the property sought to be condemned.

ID.—FACTS SHOWING NECESSITY NOT REQUIRED TO BE PLEADED.—Facts showing the necessity for the taking of such rights for public use are not required to be pleaded, but are matter of evidence.

ID.—QUANTITY APPROPRIATED BY PLAINTIFF IMMATERIAL—QUANTITY OF RIPARIAN RIGHTS NEED NOT BE STATED.—Where the complaint sets forth that plaintiff is the owner and appropriator of five thousand inches of the waters of the stream, that fact is immaterial, where the only property sought to be condemned is the riparian rights of the defendants. The quantity of such riparian rights need not be stated; but it is sufficient that the complaint avers the necessity for taking all of the water of the creek, including the riparian rights of the defendants, which is the only matter in issue.

ID.—COMPENSATION TO BE FIXED.—Whatever may be the riparian rights of the defendants, which plaintiff seeks to condemn, it will be for the court or the jury to fix the compensation to be paid to each owner, as the facts proved may warrant.

ID.—PLEADING—PUBLIC USE.—A complaint showing that plaintiff is an electric power and light company, and that it needs the riparian rights of the defendants, sufficiently shows that the use sought is a public use, and that the plaintiff is in charge of a public use.

ID.—PUBLIC USE MUST BE DECLARED BY LAW.—The complaint must show that the use for which the property is to be taken is for a public use, so declared by the legislature. No property can be condemned for a private use, or to accomplish any purpose not of a public character.

ID.—RIPARIAN RIGHTS NOT EXPRESSLY ENUMERATED—NECESSARY IMPLICATION—AUTHORITATIVE CONSTRUCTION.—The mere fact that riparian rights are not expressly enumerated as the subject of condemnation is not conclusive, where their condemnation is necessarily implied in the language of subdivisions 12 and 13 of section 1238 of the Code of Civil Procedure, construed with section 1240 thereof, which includes "all real property" and "all classes of private property not enumerated," with no express exception of riparian rights; and where it is settled by authoritative construction that riparian rights are the proper subject of condemnation to public use.

ID.—COMPLAINT SHOWING CAUSE OF ACTION — DEMURRER IMPROPERLY SUSTAINED — REVERSAL.—Where the complaint stated a sufficient cause of action for the condemnation of riparian rights for the public use of an electric light and power company, a demurrer thereto was improperly sustained and the judgment sustaining it must be reversed, with direction to overrule the demurrer.

APPEAL from a judgment of the Superior Court of Shasta County.   Charles M. Head, Judge.

The facts are stated in the opinion of the court.

Geo. O. Perry, Perry & Kerrigan, and Guy C. Earl, *Amicus Curiae,* for Appellant.

Francis Carr, for J. R. Hunt, and Warren G. Atkins, Respondents.

Herzinger & Herzinger, for Martha Sheridan, Respondent.

Reid & Dozier, *Amici Curiae,* for Respondents.

### OPINION ON REHEARING.

CHIPMAN, P. J.—We still adhere to the conclusions reached in the former opinion for the reasons there given.

We invited further consideration of two questions—first, Does the complaint state sufficient facts upon the issue of the necessity for the taking? and, second, Does the statute authorize the taking of water for electric power, light and heat purposes?

In addition to what is said in the former opinion, it may not be amiss to make some further observations upon these two questions.

First, as to the question of necessity. Section 1241, Code of Civil Procedure, provides, as we have seen, that—"Before any property can be taken, it must appear: 1. That the use to which it is to be applied is authorized by law; 2. That the taking is necessary to such use." The point urged is that the complaint does not allege facts sufficient to present the issue of necessity; that the averments do not meet the requirements of the law without showing: 1. That the wants and needs of the people require the production and supply of electricity in excess of the present supply; 2. That the present equipment controlled by appellant is insufficient to meet such needs; 3. That the particular property sought is available and can be and will be used for the public purposes mentioned and that it is necessary to take the property to meet the public needs.

It is alleged that a large number of people are without electricity whose needs in that regard appellant alleges its desire and purpose to supply, and to this end that it is necessary to condemn the property sought. Electric light and power companies, like other public service corporations, have a right and it is their duty to anticipate future needs of the public. They cannot reasonably be required to limit their preparations for future demands by their ability to provide

for them out of their present supply. New uses for electricity are constantly being discovered and applied. The supply which in the same community would at present be sufficient might be insufficient in a short time. Nor can public service corporations state with certainty to what extent their facilities to serve the public will be availed of. Neither can they determine, nor should they be required to determine in advance, and set forth in their complaint that their present equipment is insufficient to meet the needs of the people. It is, of course, required that the particular property sought be available and can be used for the purposes desired and also that it is necessary to meet the public needs. But these are matters the particular facts in support of which are evidentiary rather than subjects of pleading. In *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 532, [28 Pac. 681], and in *Central Pacific R. R. Co.* v. *Feldman,* 152 Cal. 309, [92 Pac. 849], cited by respondent, it was the evidence necessary that was being considered and not the pleadings. The complaint is set out quite fully in the original opinion and its averments need not be here repeated. They seem to us sufficient to present the issue of necessity for the taking. The burden of establishing this issue is upon plaintiff, and it was not required of plaintiff to set forth in its complaint the evidence on which it relies to prove the alleged necessity. This evidence may or may not be found sufficient when subjected to proper test at the trial, but we do not think that the burden is upon plaintiff to present all the facts in its complaint in order that this test may be fully and properly determined on demurrer.

The more serious question urged is, Does the statute authorize the condemnation of property by electric power, light and heat companies, under any condition of facts? Respondent denies to such corporations such power. The claim is that while they may condemn property for "canals, reservoirs, dams, ditches, flumes, aqueducts and pipes and outlets, for storing and discharging water for the operation of machinery for the purpose of generating and transmitting electricity for the supply of mines (and for many other specified purposes) with electric power," as set forth in subdivisions 12 and 13, section 1238, Code of Civil Procedure, they cannot condemn water, without which the canals, reservoirs, etc., would be useless, but must acquire the water by appro-

priation or purchase; that they may condemn the *means*
whereby water may be used but not the *water itself*. This
denial, of course, extends to all persons or corporations, mu-
nicipal or otherwise, to acquire water in any other method
than by appropriation or purchase for such purposes, how-
ever imperative the need of the public. In our former opin-
ion we endeavored to show that water is property and may
be taken like other property. It is conceded now that water
is property and may be taken for purposes authorized by
law, but the claim is that it is not so authorized in terms or
by implication in subdivisions 12 and 13 above referred to;
that in neither one of these subdivisions is water expressly
mentioned "for power purposes or for generating electricity
as one of the uses of the power company for which condemna-
tion may be made."

Section 1238 provides that, "subject to the provisions of
this title, the right of eminent domain may be exercised in
behalf of the following uses." Then follows an enumeration
of the uses, among them the uses mentioned in subdivisions
12 and 13. The property which may be taken is classified
and enumerated in section 1240, and, as we have held, in-
cludes water and riparian rights to water. Section 1238 de-
clares: "The right of eminent domain may be exercised *in
behalf* of the following uses," and among them are canals,
reservoirs, etc., "from sources other than a navigable lake,"
for "supplying, storing and discharging water for or in con-
nection with the operation of machinery, for the purposes of
generating and transmitting electricity," etc. If water may
be taken and canals, reservoirs, etc., may be taken for sup-
plying, storing and discharging water, it seems to us that
water may be taken to be used in canals, ditches, pipes, etc.,
or stored in reservoirs for the uses enumerated. The limita-
tion upon the taking of water is found in section 1238 and
the taking must be for one of the uses authorized by that
section; and if water is sought under eminent domain the
power may "be exercised *in behalf* of the" uses enumerated.
When the statute says that land may be condemned (section
1240), the right to take it for canals, reservoirs, etc., i. e.,
"in behalf of the following uses," is found in section 1238.
Water is as necessary for the uses and purposes mentioned
in subdivisions 12 and 13 as is land. And land is therein

mentioned only in connection with the site on which to erect the machinery to generate electricity. When the statute declares canals, reservoirs, etc., to be public uses, it does not mean completed or already constructed canals, reservoirs, flumes, pipes, etc.; it means the right to take land to be used for the purpose of constructing these agencies or instrumentalities "for supplying, storing and discharging water" for the purposes named. Respondents' contention, carried to its logical conclusion, would deprive the corporation of the right to condemn land for canals, reservoirs, ditches, etc., because land is not expressly mentioned, and would confine the right to condemn only completed canals, reservoirs, etc. Obviously this cannot be the true construction to be given the statute. Yet water is as essential to the use of canals, reservoirs, etc., as is land; each is useless without the other. Reading sections 1238 and 1240 together, they mean to say this: "Water may be taken by the right of eminent domain in behalf of the following public uses, namely, canals, reservoirs, etc., in connection with the operation of machinery, for the purpose of generating and transmitting electricity."

The case is quite supposable where certain land is susceptible of being utilized as a reservoir, and may be indispensable to the success of plans for furnishing power with which to generate electricity for the purposes mentioned in the statute. The owner of this land may have it in a high state of cultivation under irrigation from a stream of water flowing through it which he has appropriated for such use. To convert this land into a reservoir must necessarily deprive the owner of both land and water and in assessing the damage, in taking the land, the damage would be enhanced by the water appropriated with it. In such case the water is appurtenant to the land and would be taken with it. The statute gives the right to take the land for a reservoir and this right would not be affected because it also involved the taking of water with it.

Somewhat similar provision is made by subdivision 3 of section 1238, for the exercise of eminent domain "in behalf of . . . ponds, lakes, canals, aqueducts, reservoirs . . . for conducting or storing water for the use of the inhabitants of any county, incorporated city, or city and county, village or town." Respondents' contention would prohibit the taking

of water "in behalf of" these objects, which it seems to us would be no less violative of the intention of the statute than that sought to be given subdivisions 12 and 13.

In *St. Helena Water Co.* v. *Forbes*, 62 Cal. 182, [45 Am. Rep. 659], where sections 1238 and 1240 were under review, and where it was held that water might be taken for the purpose of supplying the inhabitants of a town, Mr. Justice Myrick very clearly elucidated the question. He said: "The land through, over, and upon which pipes, aqueducts, flumes and ditches may be constructed or laid is not used by the public; the corporation uses the land for the conveying of water; the water, after having been conveyed, is taken by the public, and at that point, strictly speaking, is where the public use commences; but both the water and the land are taken, to the end that the public may be supplied with the one by the use of the other. In this case the plaintiff has already acquired the one, viz., places for its pipes, etc. (which are worthless and serve no purpose without water), and now seeks to acquire the necessary water, such water, when acquired, to be used in behalf of, for the benefit of, to the interest of, for the behoof of, ditches, etc., for conducting water for the use of the inhabitants of a village. (See Worcester's Dictionary, 'Behalf.')" In the same case Mr. Justice Ross said: "There can be no sort of doubt that the supplying of the inhabitants of a town with pure fresh water, is one of the 'public uses' in behalf of which the legislature has declared the right of eminent domain may be exercised. (Code Civ. Proc., sec. 1238.)" Following this declaration that the supplying of water to the inhabitants of a town is a public use (subd. 3 of sec. 1238, Code Civ. Proc.), the court further says: "It is equally clear that the plaintiff is authorized to exercise the right of eminent domain *in behalf of* such use. Section 1001 of the Civil Code provides: 'Any person may, without further legislative action, acquire private property for any use specified in section 1238 of the Code of Civil Procedure, either by consent of the owner or by proceedings had under the provisions of title VII, part III, of the Code of Civil Procedure (relating to eminent domain); and any person seeking to acquire property for any of the uses mentioned in such title is an agent of the state, or a person in charge of such use, within the meaning of those terms, as

used in such title.' '' The opinion then proceeds to show that water, which was the property in question, ''comes within the category of real property.''

In *Pasadena* v. *Stimson,* 91 Cal. 238, [27 Pac. 604], it was held, under section 1001 of the Civil Code, that private property might be taken for any use specified in section 1238, Code of Civil Procedure. So held in *Santa Cruz* v. *Enright,* 95 Cal. 105, [30 Pac. 197], both of which cases are referred to approvingly in *City of Los Angeles* v. *Leavis,* 119 Cal. 164, [51 Pac. 34]. We confess our inability to escape the simple logic of these cases, which is, when reduced to the simplest statement, that water is property and may be taken ''in behalf of'' any of the uses specified in section 1238, Code of Civil Procedure; and that the objects and purposes of plaintiff constitute a public use under that section. (See *Shasta Power Co.* v. *Walker,* 149 Fed. 568; later, after trial, as reported in 160 Fed. 856, 87 C. C. A. 660; paragraphs quoted in our first opinion.)

The judgment is reversed, with directions to overrule the demurrer.

Burnett, J., and Hart, J., concurred.

The following is the opinion of the district court of appeal, rendered on the 17th of December, 1909, which is approved in the foregoing opinion on rehearing:

CHIPMAN, P. J.—This is an action to condemn certain riparian rights. A general and special demurrer to the third amended complaint was interposed by certain defendants and sustained by the court without leave to amend. Plaintiff appeals from the judgment. There are twenty-five separate causes of action involving the rights of as many different and separate riparian owners. Three appeared and had judgment, who will hereinafter be referred to as defendants. Each separate cause of action is couched in substantially the same language and the attack upon one may be treated as an attack upon the other two.

From the complaint it appears that plaintiff was incorporated under the laws of this state in January, 1907, ''for the term and duration of fifty years from the date of its incorporation, and is now in charge of the public use hereinafter

mentioned, for which the property hereinafter described is sought to be taken." Defendants contend that the complaint fails to state facts showing that the use is a public use or that plaintiff is in charge of a public use or that the taking of the property is necessary to such use; also, that the allegation of the complaint that plaintiff is the owner of the property sought to be condemned is fatal to the pleading. The special demurrer is upon the grounds of uncertainty and ambiguity, in this, that the complaint "does not distinctly state the use or purpose to which plaintiff . . . seeks to apply the property," or "describe with sufficient certainty the property"; and does not "state the or any reasons or facts showing the necessity for taking the property." Furthermore, that it appears from the complaint that plaintiff owns five thousand inches of the waters of said Old Cow creek, but it "does not definitely appear that there is any other or greater amount of water in said stream to be condemned," or "what amount or right, if any, to said stream the defendants hold or own which the plaintiff seeks to condemn." It becomes necessary to present somewhat fully the averments of the complaint:

## "II.

"That plaintiff is incorporated for the purpose, among other things, to generate, make and produce by water power, and to transmit and distribute for sale to and by the public generally in the county of Shasta, and elsewhere in the state of California, electric current (which words are used herein to designate all kinds and forms of electricity and electric energy) for light, power and heat, and for other and all purposes and objects for which said current can now or may hereafter be used and applied by the public, and to acquire all kinds of property and do every act necessary or convenient to generate, make, produce, transmit and distribute said electric current, and generally for the supplying and storing water for the operation of machinery for the purpose of generating and transmitting such electric current and electricity for the supplying of mines, quarries, railroads, tramways, mills, and factories with electric power, and also for the supplying electricity to light or heat mines, quarries, mills, factories, incorporated cities and counties, villages and towns; and said plaintiff owns and is now in possession, use and

enjoyment of a certain franchise granted by the county of Shasta, by ordinance of the board of supervisors thereof, for the erection of poles and the stringing of wires thereon during the period of plaintiff's corporate existence as hereinbefore set forth, for the transmission of electricity over, along and upon the public roads and highways of said county of Shasta, and over, along and upon the streets, avenues and alleys of the unincorporated towns of said county of Shasta, for the supplying of inhabitants of the said county of Shasta with such electricity for light, power and heat; and also owns and is in possession, use and enjoyment of a certain franchise granted by the city of Redding, the only incorporated city in said county of. Shasta, by ordinance of the board of trustees thereof, for the erection of poles and the stringing of wires thereon, for the transmission of electricity over, along and upon the public streets, avenues and alleys of said city of Redding, for the supplying of inhabitants of said city with such electricity for light, power and heat.

## "III.

"That plaintiff is by virtue of a location and appropriation made the —— day of September, 1904, and duly sold, assigned, transferred and conveyed to this plaintiff thereafter and prior to the commencement of this action, the owner of and entitled to take, use and divert five thousand inches of the waters running and flowing in that certain creek in the eastern portion of said county of Shasta, commonly known and designated as Old Cow creek, at a point in section 32, township 33 north, range 1 east, M. D. M., to be conveyed by means of ditches, flumes, aqueducts and natural water ways from the said point of diversion to a point in section 6, township 31 north, range 1 west, M. D. M., where the same is to be used for the purpose of generating electricity as above set forth and is then to be permitted to return to and flow down a certain branch of said Old Cow creek known as South Cow creek, down which branch known as South Cow creek said water will flow and return to and mingle with the waters flowing down Old Cow creek, its natural channel as aforesaid.

## "IV.

"That said Old Cow creek is not a navigable stream or watercourse. . . .

"The said Old Cow creek flows and runs over five thousand inches of water, and said plaintiff is, as aforesaid, the owner of five thousand inches of water running and flowing therein, by virtue of appropriation as aforesaid, and entitled to take, divert and use the same as against the said defendants, and as against all the world except as to riparian rights of said defendants therein, which said riparian rights are, as herein set forth, sought to be condemned in this action.

## "V.

"That the name of the sole owner and claimant of the only person in the use, occupation and possession of or having any interest in the property described in this first cause of action in this complaint, or any damages for the taking thereof, so far as is known to or can be ascertained by this plaintiff, is as follows, to wit:

"Martha A. Sheridan is the owner and is in possession of a certain tract of land situated in said county of Shasta, over, along and upon which said waters of said Old Cow creek flow and which is wholly below the point of diversion and between said point and the junction of said Old Cow creek and said South Cow creek as above described, which tract of land is particularly described as follows, to wit: The east half of the southeast quarter of section 6, township 32 north, range 1 east, M. D. M., together with the riparian rights connected therewith and appurtenant thereto, in and to the waters of said Old Cow creek, . . . (particularly describing the nature of said riparian rights).

"That not exceeding two acres of the said lands above described are capable of being irrigated and the total amount of water required to irrigate such land does not exceed one-half of one miners' inch, measured under a four-inch pressure, as aforesaid.

## "VI.

"That for the purpose of the construction, operation, use, accommodation and maintenance of plaintiff's proposed canals, flumes, ditches, aqueducts, pipe-lines, electric power lines and

generally for the supplying according to the intent and purposes of its incorporation, said electricity and electric current for the public uses aforesaid, it is necessary that plaintiff appropriate, take, use, acquire, and hold all of said five thousand inches of the running and flowing waters of said Old Cow creek passing through, over, upon and along the several tracts of land herein particularly described, and all riparian rights appurtenant to and connected with said tract of land hereinbefore described in and to said waters of said Old Cow creek.

## "VII.

"That the use to which said waters are to be taken and applied by said plaintiff as aforesaid is a public use and that plaintiff is in charge of such public use, and that the taking and acquiring of said waters and said riparian rights as aforesaid is necessary to said use, in that it is necessary that plaintiff shall take said waters as aforesaid as against said defendants and as against said tracts of land, and use and hold the same for the use and purposes herein mentioned and deprive the owners as aforesaid of the riparian rights hereinbefore mentioned and described, and divert, take, use and hold the waters of said creek to the extent of plaintiff's claim thereto as aforesaid, as against the riparian rights of said defendants, at and from the point hereinbefore mentioned as the point of diversion to the point where the said waters are to be used and returned to the natural channel of said Old Cow creek as aforesaid, and by the means hereinbefore mentioned.

"That a large number of the inhabitants of said county of Shasta, and of the public generally in said county of Shasta, and elsewhere in the state of California, are without electricity or electric current for such purposes of light, power and heat or for any other purpose, and it is necessary that plaintiff should take said waters and said riparian rights for the purpose of supplying said use.

## "VIII.

"That plaintiff has acquired for said public use from the owners of said lands bordering on Old Cow creek or through which said creek flows between said intended point of diversion and said point where the waters are to be returned to

the natural channel of Old Cow creek, all riparian rights in and to the waters running therein through and over said lands save and except from the above-named defendants in this action, the property hereby sought to be condemned.''

We think the purpose for which the property is sought to be condemned appears with sufficient certainty. The land of defendants is definitely described by legal subdivisions and it is alleged that the waters of Old Cow creek flow ''over, along and upon'' said land, ''which is wholly below the point of diversion and between said point and the junction of said Old Cow creek and said South Cow creek as above described.'' The complaint also alleges that it is necessary that plaintiff appropriate, take and use ''all riparian rights of defendants to and connected with said tract of land hereinbefore described in and to said waters of said Old Cow creek.'' The prayer is for the condemnation of the riparian rights of defendants. The complaint also sets forth specifically the nature and character of the riparian rights connected with said land. This we think sufficient to show with reasonable certainty the property sought to be condemned.

The point made that the facts should be stated showing the necessity for taking the property was made in *Rialto Irr. District* v. *Brandon,* 103 Cal. 384, [37 Pac. 484], and it was there held that the rule contended for is not a rule of pleading but of evidence.

It is stated in the complaint that there is water flowing down Old Cow creek in addition to the five thousand inches appropriated and owned by plaintiff. The precise quantity flowing through defendants' land is not stated and need not be. It does appear that more water passes down the creek than has been appropriated by plaintiff, and that the various defendants have certain riparian rights to all of it, and plaintiff avers a necessity for taking all the water of the creek, including that to which the defendants are entitled as riparian owners. Plaintiff was not called upon to make an apportionment in its complaint of those riparian rights among their several owners. Whatever those rights may be, plaintiff seeks to condemn all of them, and it will be for the court or a jury to fix the compensation to be paid to each owner as the facts may warrant.

The case of *Shasta Power Co.* v. *Walker,* 149 Fed. 568, was an action to condemn lands. In many of its features the case was not unlike the one here—the purpose of plaintiff being the same as here and stated in much the same form of pleading. The question whether the use was a public use came up on demurrer. The court said: "Taking the allegations of the complaint as a whole into consideration, and being mindful that the plaintiff has acquired franchises from the city of Redding and the county of Shasta for the purpose of serving the inhabitants of both such municipalities with light, heat and power, I am of the opinion that the plaintiff is shown to be a public service corporation, and hence that the complaint is within itself sufficient. The objection that the contemplated use is vague, indefinite and uncertain cannot be maintained." The case was later tried on its merits and plaintiff had judgment, and is reported in 160 Fed. 858, 87 C. C. A. 660. In the discussion of what is necessary to constitute a public use and speaking with reference to subdivision 12 of section 1238, Code of Civil Procedure, *supra,* the court said:

"There can be no doubt that within this provision the furnishing of electricity as it is proposed to be furnished by the defendant in error is a use for which the legislature intended that the right of eminent domain might be exercised. The purpose of the statute is to remove obstacles in the way of development and progress in the state, and it is in harmony with the constitution and section 1001 of the Civil Code, which gives to any person without further legislative action the power to acquire property for any of the uses specified in section 1238, 'either by the consent of the owner or by proceedings had under the provisions of title 7, part 3, of the Code of Civil Procedure, and any person seeking to acquire property for any of the uses mentioned in said title is an agent of the state or person in charge of such use within the meaning of these terms as used in said title.' . . .

"And it has generally been held by the courts that the generation of electric power for distribution and sale to the public on equal terms is a public enterprise, and that water used for that purpose is devoted to a public use." (Citing cases.)

It is no longer a disputed proposition that the state through its legislature, in the exercise of its police power, may regulate the rate to be charged by corporations doing a business affected with a public interest. Says Mr. Thompson: "Property is clothed with a public interest within the meaning of this rule when it is used in a manner to make it of public consequence, and its use affects the community at large." (3 Thompson on Corporations, sec. 2950.)

In support of the general demurrer it is urged that plaintiff has stated itself out of court by averring ownership of the property sought to be condemned; citing *City of San Jose* v. *Freyschlag*, 56 Cal. 8. Plaintiff does not allege ownership of any interest in the riparian rights of defendants. It is alleged that the creek flows five thousand miner's inches and over; that plaintiff is the owner of five thousand inches flowing in the creek and the right to divert the same "except as to the riparian rights of said defendants therein, which said riparian rights are, as set forth herein, sought to be condemned in this action." It appears from the complaint that defendants have a certain interest in the waters to be condemned—namely, riparian rights therein—and these are the rights put in issue.

We think the complaint states facts sufficient to show that the use is a public use and that plaintiff is in charge of a public use. It is true, as claimed by defendants, that the complaint must show that the use for which the property is to be taken is a public use so declared to be by the legislature. It is also true that the courts will not condemn property for a use "which is evidently private or to accomplish some purpose which is not of a public character."

The right of the people or government to take private property for public use is given by section 1237, Code of Civil Procedure, and may be exercised in the manner provided in the subsequent sections—part 3, title VII, of the same code. Section 1238 sets forth the public uses in behalf of which this right may be exercised, "subject to the provisions of this title." Among those public uses are found in subdivisions 12 and 13 the following:

"12. Canals, reservoirs, dams, ditches, flumes, aqueducts and pipes and outlets natural or otherwise for supplying, storing and discharging water for the operation of machinery for

the purpose of generating and transmitting electricity for the supply of mines, quarries, railroads, tramways, mills, and factories with electric power; and also for the applying of electricity to light or heat mines, quarries, mills, factories, incorporated cities and counties, villages or towns; and also for furnishing electricity for lighting, heating or power purposes to individuals or corporations, together with lands, buildings and all other improvements in or upon which to erect, install, place, or use or operate machinery for the purpose of generating and transmitting electricity for any of the purposes or uses above set forth.

"13. Electric-power lines, electric-heat lines; and electric light, heat and power lines."

Section 1239 divides the estates and rights in lands subject to be taken for public use into three classes: 1. A fee simple when taken for certain purposes not here involved. "2. An easement, when taken for any other purpose." 3. The right to occupy land to remove therefrom such earth, etc., as may be necessary for some public purpose.

Section 1240 classifies and enumerates the private property which may be taken under this title: "1. All real property belonging to any person. . . . 6. All classes of private property not enumerated may be taken for public use when authorized by law." And section 1241 provides that "Before any property can be taken, it must appear: 1. That the use to which it is to be applied is authorized by law; 2. That the taking is necessary to such use."

The act of March 22, 1905, [Stats. 1905, p. 777], provides for the sale of franchises by counties and municipalities, among others, "to erect poles or wires for transmitting electric heat and power over or upon any public street or highway," and provides for the payment of two per cent of the gross annual receipts for the enjoyment of such franchise. Section 629 et seq. of the Civil Code are regulatory, to some extent, of corporations engaged in supplying electricity. The statute relating to eminent domain, however, seems to clearly recognize the object in which plaintiff is engaged and for which it was incorporated as a public use.

The proposition principally discussed and upon which defendants mainly rely is as follows: "The statute does not authorize the condemnation of water or riparian rights for

creating power, for generating electricity, for power lines, heat lines, or electric heat, light or power." The contention is that section 1240, Code of Civil Procedure, "fails to provide expressly for the condemnation of water or the riparian right of the land owners to the flow of water over their lands, thereby leaving a doubt as to the intention of the legislature as to what property should be condemned," and there being a doubt it must be resolved against the right to condemn. Attention is invited to subdivision 7 of section 1240 as showing that the "classes of property not enumerated" may be taken only "when such taking is authorized by law." But this latter clause adds nothing to the statute, for section 1241 provides that "before property can be taken, it must appear that the use to which it is to be applied is a use authorized by law." This condition applies to all the classes of property enumerated in section 1240. The question, then, is, Is water or the riparian right to water property and does it come within any of the classes enumerated as the subject of condemnation? The word "property" includes property real and personal. (Civ. Code, sec. 14.) Anything of which there may be ownership is called property. (Civ. Code, sec. 654.) Clearly, water and the right to its use as riparian to land is property. If it is to be regarded as real property it falls within subdivision 1 of section 1240, and if it is to be regarded as property other than such as is enumerated in the eight other classes, it falls within subdivision 7.

The supreme court said, in *Hill* v. *Newman,* 5 Cal. 445, [63 Am. Dec. 140] : "The right to water must be treated in this state as it always has been treated, as running with the land, and as a corporeal privilege bestowed upon the occupier or proprietor of the soil; and as such has none of the characteristics of mere personalty." In *Lux* v. *Haggin,* 69 Cal. 392, [10 Pac. 754], the court said: "The right to running water is defined to be a corporeal right or hereditament, which follows or is embraced by the ownership of the soil over which it naturally passes." (Citing cases.) It would seem to be too plain for argument that if land may be condemned its incidents may also be taken; and whatever doubt there may be of the intention of the legislature in using the term land, such doubt is cleared away by the declaration that "all classes of private property not enumerated may be taken for public

use when authorized by law." These provisions would seem to invite but a single further inquiry, Is the taking authorized by law? The answer here is equally clear and free from doubt and is given in section 1238, which authorizes the exercise of the right of eminent domain in behalf of the uses mentioned in subdivisions 12 and 13 of that section. We have, then, the clearly expressed authority to take property for the use in question, and we also have a clearly expressed description of the property which may be taken. The fact that the statute does not specifically mention water and riparian rights to water suggests no doubt to our minds as to the intention of the legislature.

Mr. Lewis says: "Land and all estates, rights, interests and easements in, or appurtenant thereto, may be taken under the power of eminent domain. There may be a question whether the taking of a particular property, right or easement has been authorized, but if the intention of the legislature is clear, its power is beyond question. The right of a corporation to maintain one or more bridges across a street may be condemned. The rights of riparian and abutting owners may be condemned without taking any estate in the land to which they pertain." (1 Lewis on Eminent Domain, sec. 262a.) The same author says: "All kinds of property, and every variety and degree of interest in property, may be taken under the power of eminent domain." (Lewis on Eminent Domain, sec. 262.) We cannot doubt that the legislature meant, by subdivision 7, section 1240, to include every class of private property not specifically enumerated and that the language is not to be interpreted as excluding water and riparian rights simply because they are not distinctly mentioned. Defendants would have the court ingraft upon the statute an exception so that it would read, "all classes of private property not enumerated *except water and riparian rights* may be taken for public use." This the court cannot do. There is no element of sacredness peculiar to water that should exempt it from bearing the burden placed upon other property when necessary to be taken for the public good.

In the case of *St. Helena Water Co.* v. *Forbes*, 62 Cal. 182, [45 Am. Rep. 659], the proceeding was "to condemn the waters of the creek (York creek) for the purpose of supplying the inhabitants of the town with water," and the court stated

the principal question to be "whether or not, under the laws of this state, the right of a private individual to enjoy the flow of water in its natural channel, upon or along his land, can be taken from him for such purpose." Sections 1239 and 1240 were under review, and the court decided that the right claimed by defendant could be condemned.

The court, in *Alta Land etc. Co.* v. *Hancock,* 85 Cal. 219, [20 Am. St. Rep. 217, 24 Pac. 645], referred to the riparian right of Hancock (to the extent that it existed) "as an appurtenance to the land, running with it as a corporeal hereditament. It was one which might be segregated by grant or condemnation, or extinguished by prescription." While the question was not directly involved, the opinion is not without value. In *Gould* v. *Stafford,* 91 Cal. 146, 155, [27 Pac. 543, 546], the court said: "The right of a riparian proprietor to the flow of a stream of water over his land is an incident of his property in the land, is annexed to the land, and considered part and parcel of it (citing *St. Helena Water Co.* v. *Forbes,* [62 Cal. 182, 45 Am. Rep. 659]), but may be 'segregated' from the land by grant, condemnation, or by prescription," and, resulting from this doctrine, it was held that the grantors of plaintiff might grant their riparian rights, and hence a subsequent deed of the land would not convey riparian rights.

In *Lux* v. *Haggin,* 69 Cal. 300, [10 Pac. 697], the court stated that in *St. Helena Water Co.* v. *Forbes,* [62 Cal. 182, 45 Am. Rep. 659], "the main question was whether the code provides for a condemnation of that species of property (riparian right) to public uses. The question was answered in the affirmative."

*City of Santa Cruz* v. *Enright,* 95 Cal. 105, [30 Pac. 197], was an action to condemn the right to the waters of a certain creek. Enright claimed that there was neither authority nor necessity for the exercise of the power, but if there was such power he was entitled to compensation not only as a riparian proprietor but as an appropriator. The distinct question now here was not before the court, but the waters of the creek were condemned and the judgment was affirmed.

*Hercules Water Co.* v. *Fernandez,* 5 Cal. App. 726, [91 Pac. 401], was an action to condemn riparian rights. The judgment of condemnation was reversed, but the right to con-

demn was not questioned. In both the cases last above cited
eminent counsel appeared, and it is not probable that both
they and the court would have failed to observe so vital a
matter as is now being urged had the point been deemed to
possess merit.

Subdivision 6, section 1240, of our Code of Civil Pro-
cedure, is the same as subdivision 6 of section 5958, Revised
Codes of North Dakota. In the case of *Bigelow* v. *Draper,*
6 N. D. 152, [69 N. W. 570], it was held that riparian rights
of a land owner may be condemned. (Citing *St. Helena
Water Co.* v. *Forbes,* 62 Cal. 182, [45 Am. Rep. 659], and
other cases.) There a railroad corporation condemned the
right to a strip of land across the bend of a creek by which
to divert the water of the creek and to extinguish the riparian
rights to the stream in the bend of the creek thus cut off.
The court said, among other things: "It was not necessary
to condemn the land through which flows the river to be
diverted from its channel. There appears to be no necessity
for the taking of the real estate itself; and it is a familiar
principle of law that the wresting of private property from
the hands of the owners for a public use should never be
permitted to extend beyond such property or such interest
in property as is reasonably required to subserve the interests
of the public." The principle was followed in *State* v.
*Superior Court,* 48 Wash. 277, [125 Am. St. Rep. 927, 93 Pac.
423, 17 L. R. A., N. S., 1005], the court saying: "If riparian
rights, right of access, right of light and air, and other
kindred, intangible rights appurtenant to real estate, are
property, they are certainly such property, and such an in-
terest in real estate, as an owner would be entitled to alienate,
thereby conveying an easement. If such rights may be con-
veyed, we see no reason why they may not, under the right
of eminent domain, be condemned when necessary for public
use, without an appropriation of the land itself." It was
also held in *Clear Creek Water Co.* v. *Gladeville Imp. Co.,* 107
Va. 278, [58 S. E. 586], that riparian rights could be con-
demned. Also in *Watauga Water Co.* v. *Scott,* 111 Tenn.
321, [76 S. W. 888], although in that case the law failed to
provide for compensation and the power was for that reason
alone held not to have been given. In *Crawford* v. *Hathaway,*

67 Neb. 325, [108 Am. St. Rep. 647, 6 L. R. A. 889, 93 N. W. 781], the court decided that riparian rights could be condemned under a statute authorizing condemnation of real property.   The court said: ''The right of riparian proprietors to the use of the waters flowing in the streams to which their lands are adjacent, when once attached, is in its nature a vested right in property, a corporeal hereditament, being a part and parcel of the riparian land which is annexed to the soil, and the use of it is an incident thereto, of which the owner cannot be rightfully divested except by grant, prescription or condemnation. . . . This property right like any other part of his realty is subject to condemnation and appropriation for public use in the manner provided by law.''   In *McGhee Irr. Ditch Co.* v. *Hudson,* 85 Tex. 587, [22 S. W. 398], it was held that a statute authorizing condemnation of land carried with it the authority to condemn riparian rights. These cases appear to treat such rights as land or as embraced within the term land, as was the basis of the decision in *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182, [45 Am. Rep. 659]. We do not feel justified in attempting to test the question by a comparison of the advantages and value of irrigation with the benefits to the public that may be derived from the exercise of the power here invoked.   Considerations looking to the value or necessity of the property to the private owner must give way to the requirements of the public at large, for the theory upon which all property is held and enjoyed is that whenever the state needs it as necessary to the welfare of the people thereof it has the right to so declare by law and to take it in accordance therewith, the assumption being that the private owner is compensated in damages and in sharing with other citizens the benefits of the use to which his property is dedicated.   And should this in a given case seem inadequate, there is the still further consideration that the rights of the public are paramount to those of the individual, and the welfare of society may rightfully demand unrequited sacrifices of its individual members.

It seems to us that the right to condemn water and the riparian rights thereto, as a public use, is too well grounded in this state, under the law as it now exists, to justify us in setting it aside upon some new view that may now be urged.

The judgment is reversed, with directions to overrule the demurrer.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1910.